UNITED STATES *v.* NORWEGIAN BARQUE "THEKLA," HER TACKLE, ETC.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 258. Argued November 20, 1924.—Decided December 1, 1924.

1. When the United States comes into court to assert a claim, it so far takes the position of a private suitor that justice may be done with regard to the subject matter. P 339.

2. In a collision case, wherein libel and cross libel of the respective owners had been consolidated and the first libelant had been ordered under old Admiralty Rule 53 to give security for the other's damages, the United States intervened, standing on the first libel, and filed a claim alleging its possession and ownership of that libelant's vessel at the time of collision, with a stipulation of the Emergency Fleet Corporation for security in a specified sum conditioned that the claimant (United States) and the Corporation should abide all orders of the court and pay the amount awarded by the final decree. The District Court, finding that the United

States was owner, *pro hac vice*, of the vessel claimed, using it for war service, and that that vessel alone was at fault, decreed damages against the United States and the Fleet Corporation, as stipulator, with interest and costs. *Held:*

(*a*) That the District Court was empowered to enter the decree, p. 339, since

(*b*) The subject matter was the collision rather than the vessel first libeled, p. 340;

(*c*) The reasons against creating government liability for tort were inapplicable, *id.;*

(*d*) The Government's joinder in the suit carried with it acceptance of whatever liability the courts might decide to be reasonably incident to that act and for such acceptance no statute was necessary, p. 341;

(*e*) The stipulation for security, ordered before the United States made itself a party, was valid, *id.;*

(*f*) Interest and costs can be recovered from the Fleet Corporation and the United States. *Id.*

QUESTIONS certified by the Circuit Court of Appeals on an appeal from a decree of the District Court against the United States, as claimant, and the Fleet Corporation, as stipulator, for damages resulting from a collision, with interest and costs. The questions propounded were: (1) Was the District Court empowered by law to render the decree entered? and, if that were answered in the negative, (2) Must the Fleet Corporation, as stipulator, respond for the damages proven? The certificate is reported in full in 295 Fed. 1020.

*Mr. Solicitor General Beck,* with whom *Mr. J. Frank Staley,* Special Assistant to the Attorney General, was on the briefs, for the United States.

The rule is now definitely established that the liability or nonliability of the Government does not depend upon procedural considerations but wholly upon the underlying principle that no obligation or liability can be imputed to it except of its creation. *The Western Maid,* 257 U. S. 419, 432, 433.

The questions now submitted, after careful analysis, do not present new problems. The ruling in *The Western Maid* is controlling. The subject matter of the cross libel (*in rem*) is an assumed lien liability of an Army cargo transport for resulting collision losses. The status of the *Luckenbach* at the time of the collision was identical with the status of the *Carolinian* in *The Western Maid Case*, in which this Court has determined that Army transports are not subject to the incurment of lien liability for collision losses. No proceedings *in rem* can be successfully maintained against Army transports for collision losses, because no *in rem* liability exists. In the absence of an *in rem* liability cross libels *in rem* can not be prosecuted. The District Court was without jurisdiction over the subject matter of the cross libel.

The owners of the *Thekla* could not have successfully maintained an original libel *in rem* against the *Luckenbach*. They could not have maintained an action against the United States for this collision in any court, as the United States has not consented to be sued upon tort claims. The owners of the *Thekla* did not file a cross libel against the Luckenbach Steamship Company and could not successfully have done so, because the ownership of the *Luckenbach* had passed to the United States *pro hac vice,* and no liability rested upon the steamship company. Since the owners of the *Thekla* could not maintain an original action against the *Luckenbach,* or against her owners, or against the United States as owner *pro hac vice,* they can not create jurisdiction over the subject matter in any court to hear their claim merely by turning to the cross libel.

Whatever jurisdiction may be acquired by authority of Admiralty Rule 53, as the cross libel proceeds *in rem* against the vessel, the proofs must establish an *in rem* liability of the vessel, otherwise the cross libel must be dismissed.

By the rules recently promulgated by this Court (254 U. S. 679, 702,) Admiralty Rule 53, with some slight modification, is now Rule 50.   The substantial purpose of this rule is that both the original and cross libelants should be similarly protected by adequate security.   *Vianello* v. *The Credit Lyonnais,* 15 Fed. 637; *Empresa Maritima a Vapor* v. *North & South American Steam Nav. Co.,* 16 Fed. 502.   It did not intend that the courts should assume jurisdiction over substantive rights or matters which otherwise were not within the admiralty jurisdiction.   Only such claims as are enforceable by original proceedings can be made enforceable by cross libel.   *The Electron,* 48 Fed. 689.

The uniform decisions of our courts in admiralty matters, as well as in actions at law or in equity, have been to deny in cross actions affirmative relief against the Government (government property) in the absence of legislative consent to suit.   *Illinois Cent. R. R. Co.* v. *State Public Util. Comm.,* 245 U. S. 493; *Roumania* v. *Guaranty Trust Co.,* 250 Fed. 341.

The accepted practice under Admiralty Rule 53 has been to deny that cross libels can be maintained against the Government or its property for the collision torts of its public vessels.   *Barendrecht S. S. Co.* v. *United States,* 286 Fed. 390; *Bowker* v. *United States,* 105 Fed. 398; s. c. 186 U. S. 135.

The same ruling has been announced in proceedings at law, *United States* v. *Nippissing Mines Co.,* 206 Fed. 431; *De Groot* v. *United States,* 5 Wall 419; *United States* v. *Eckford,* 6 Wall. 484; *Reeside* v. *Walker,* 11 How. 272; and in equity cases, *Illinois Central R. R. Co.* v. *State Public Utilities Comm.,* 245 U. S. 493; *French Republic* v. *Inland Nav. Co.,* 263 Fed. 410.

Unless expressly permitted by act of Congress, no injunction can be granted against the United States.   *Case*

v. *Terrell,* 11 Wall. 199; *Hill* v. *United States,* 9 How. 386; *Belknap* v. *Schild,* 161 U. S. 16.

This Court in *Ex parte State of New York,* 256 U. S. 490, denied that " the uniform operation and effect of the characteristic principles and rules of the maritime law as a body " can impose itself upon and overrule the privileges and prerogatives which belong to the sovereign.

The Government's claim is one for damages. The Government has not brought the *res* into court, and asked that an adjudication in prize or forfeiture be had. Neither has it asked for the determination of rights to specific *res* nor for the distribution of a specific fund. The rules announced in prize and such other cases are not related to nor controlling in the present case.

The Fleet Corporation by its undertaking has assumed the payment of the lien liability of the *Luckenbach.* There is no lien liability. *Query:* Is the decree properly enforceable against the Fleet Corporation? If our reasoning is sound, it cannot be enforced.

We assume the second question also asks for instructions on the question whether or no the decree as entered properly includes an allowance of interest and costs. The stipulator only becomes responsible for the payment of such money as may properly be decreed.

The cross-libel proceedings can not be converted into a proceeding against the Fleet Corporation. It continues as a proceeding *in rem* against the Army transport *Luckenbach.*

In the absence of statutory authority, interest does not run against the Government. This general rule controls here. Even under private act cases in collision matters, where the act provides for the determination of liability upon the same principles as between private parties, in the absence of terms expressly allowing interest, interest is denied. *Pennell* v. *United States,* 162 Fed. 72, 78; *Watts* v. *United States,* 129 Fed. 222, 226; *The May-*

*flower*, 1924, A. M. C. 586; *United States* v. *Barker*, 2 Wheat. 395; *Angarica* v. *Bayard*, 127 U. S. 251.

We do not regard the rule announced in prize causes, land condemnation, and just compensation cases as applicable here. The claim, if it can be said to be a claim, is merely a demand for money owing, of the same character as a suit upon contract.

Costs are not recoverable in the absence of statutory authority.

The opinion in *Washington-Southern Nav. Co.* v. *Baltimore & Philadelphia Steamboat Co.*, 263 U. S. 629, fully reviews the history and application of old Admiralty Rule 53 and new Rule 50.

This Court in *Ward* v. *Chamberlain*, 21 How. 572, declared that on a cross libel *in rem* process must be taken out and served in the usual way. *The Bristol*, 4 Ben. 55. In *Crowell* v. *The Theresa Wolf*, 4 Fed. 152, and *Southwestern Transp. Co.* v. *Pittsburg Coal Co.*, 42 Fed. 920, the stay was denied because the counterclaim was not a proper subject for a cross libel.

The libel and cross libel are separate proceedings. *The Dove*, 91 U. S. 381, 383, 384; *The Keystone State*, 185 Fed. 781.

The consolidation of separate and distinct causes and of original actions and cross actions, in federal courts, is authorized by § 921, Rev. Stats. *The North Star*, 106 U. S. 17; *Adler* v. *Seaman*, 266 Fed. 828.

The libel and cross libel arise out of the same collision but present separate and distinct causes of action.

Since the *Western Maid* decision, the English courts have sustained the ruling that public vessels do not incur lien responsibilities for collision losses. *The Tervaete* [1922] P. 259; *The Sylvan Arrow* [1923] P. 220.

The reasoning of the District Court is in conflict with the decision of the Circuit Court of Appeals for the Second Circuit in *Roumania* v. *Guaranty Trust Co.*, 250

Fed. 341, 343. See also *In re Patterson-MacDonald Ship-building Co.,* 293 Fed. 192.

The cases upon which the District Court based its conclusions are prize and forfeiture cases. In such cases the United States has resorted to the aid of the court to procure the condemnation of vessels and has thus placed either the vessel or its proceeds in the court for judicial administration. Claims against the vessel or the funds thus have been satisfied. *Carr* v. *United States,* 98 U. S. 433.

In the Porto Rico cases cited, title to real property was involved, and the court adjudicated the interest of Porto Rico in and to such property.

" The objection to a suit against the United States is fundamental, whether it be in the form of an original action or a set-off or a counterclaim. Jurisdiction in either case does not exist unless there is specific congressional authority for it." *Nassau Smelting Works* v. *United States, ante,* 101, 106.

*Mr. Charles S. Haight,* with whom *Mr. John W. Griffin* and *Mr. Wharton Poor* were on the brief, for the " Thekla."

The United States has submitted itself to the jurisdiction of the court.

The right, if any, to recover the damages sustained by the *Luckenbach,* and the liability, if any, for the damages sustained by the *Thekla,* were throughout the right and the liability of the United States; the Luckenbach Steamship Company, originally made a formal libelant apparently for some supposed tactical advantage, was subsequently dropped out of the case; the United States has, from the beginning, been the only real party in interest, as it is now the only party before the Court on the *Luckenbach's* side. The Government's brief clearly recognizes the fact that both the libel and the answer filed

by the Luckenbach Steamship Company were filed on the Government's behalf.

The United States deliberately invoked the judgment of the court below. Claiming that the *Thekla* was at fault for the collision, it actively and affirmatively sought the judgment of the court, asked to be made a formal party-libelant with full knowledge that a cross libel was pending, filed its claim, took up the defense of the cross libel and gave security for the recovery claimed therein. It accepted the condition originally imposed by the District Court while the Luckenbach Steamship Company was the only party named as libelant, namely, that security must be given for the cross libel before the original libel could be prosecuted.

The position of the *Thekla* is (1) that, where the Government is the actor and asks the judgment of the Court with respect to a certain subject matter, it submits itself, *quoad* that subject matter, to the jurisdiction of the court; (2) that, in such a case, the Government's affirmative liability, if any, may be determined; (3) that these principles are especially applicable to cross suits in admiralty for collision, which form *one subject matter;* (4) that the Government, having accepted the court's condition and having appeared and given security, cannot, after having lost its case, reverse that action; (5) that a decree may be entered, liquidating and adjudicating the Government's liability; (6) and that, where a private corporation, the Emergency Fleet Corporation, which is admittedly suable, is before the court as a stipulator, a decree may, in any case, be rendered against it.

The cases of *The Siren,* 7 Wall. 152, *The Davis,* 10 Wall. 15, and *The Western Maid,* 257 U. S. 419, while they employ varying terminology, all recognize that collision and salvage, even where government vessels or other property are involved, give rise to claims of some sort, whether described as " inchoate," or " legal but un-

enforcible," or "ethical only," and when the Government comes into court as actor in a case involving such a claim, it opens the way for an adjudication by the court—though not, of course, for enforcement by execution against government property.

The rule, then, being, as stated in *The Western Maid*, that, when the United States comes into court to enforce a claim, it will be "assumed to submit to just claims of third persons in respect of the same subject matter," the only question before the court in this case is whether the claim of the owners of the *Thekla* is a "just claim" "in respect of the same subject matter."

In determining what is and what is not a "just claim," the court would ordinarily look for guidance to the general rules promulgated by the sovereign for its subjects; the sovereign, who has formulated these rules, may not assert that they are less than just. But in fact, the United States has expressly declared by statute that the collision rules shall be binding upon its public vessels—not only upon its subjects, but upon itself. It has, therefore, in the most solemn manner, recognized the justice of the rules in question and has definitely expressed its intention that its vessels shall obey them. Act of August 19, 1890, c. 802, § 1, Art. 13, 26 Stat. 320, 325.

The Government insists that the subject matter of the cross libel is the lien liability of the *Luckenbach*. This is, however, an obvious error. The subject matter of a case is quite independent of the question whether the libelant does or does not have a lien to secure his claim. Thus a libel for collision may be filed *in personam* as well as *in rem;* also, the libel may be *in rem* and the cross libel *in personam,* and still the libel and cross libel constitute one suit and the single question before the court is, "Where does the responsibility for the collision rest?"

The subject matter of a collision case is the collision, and in every such case the subject matter of the libel

and the cross libel must be the same. *Bowker* v. *United States,* 186 U. S. 135.

Cross suits for collision are one litigation and give rise to only one liability. *Bowker* v. *United States, supra; The North Star,* 106 U. S. 17; *The Manitoba,* 122 U. S. 97; *The Dove,* 91 U. S. 381; *Stoomvaart Mattschappy Nederland* v. *Peninsular & Oriental Steam Nav. Co.,* L. R. 7 A. C. 795.

Therefore, in determining whether this is a " just claim," to the adjudication of which the sovereign submitted by bringing suit, it is to be remembered (1) that the suit which the sovereign brought necessarily involved deciding as to the fault of both vessels; (2) that the questions as to the fault of both vessels, with the resulting legal consequences, were the very subject matter on which the Government asked the court's decision; (3) that the cross suit is one litigation with the original suit and is " incidental to and dependent upon the original suit "; (4) that the suits had been consolidated before the Government asked to be made a formal party; (5) that, under settled principles, only one liability arose from the collision; and (6) that the sovereign has expressly subjected its public vessels to the collision rules. *The Nuestra Señora de Regla,* 108 U. S. 92; *The Paquete Habana,* 175 U. S. 677.

A sovereign who intervenes in a suit may become subject to the entry of a money judgment against him, although the court has no express statutory authority to enter such a judgment. *Porto Rico* v. *Ramos,* 232 U. S. 627; *Richardson* v. *Fajardo Sugar Co.,* 241 U. S. 44; *Veitia* v. *Fortuna Estates,* 240 Fed. 256; *Gunter* v. *Atlantic Coast Line R. R. Co.,* 200 U. S. 273; *Clark* v. *Barnard,* 108 U. S. 436; *The Newbattle,* 10 P. D. 33; *The Tervaete,* [1922] P. 259.

The principle that a sovereign, by instituting, or intervening in, a suit, submits itself to cross libel is illustrated by the rule that, when a sovereign comes into court, he

comes "not as a sovereign but as a suitor." *Walker* v. *United States,* 139 Fed. 412; *United States* v. *Barber Lumber Co.,* 169 Fed. 184; *King of Spain* v. *Hullett,* 1 Cl. & F. 333; *Prioleau* v. *United States,* L. R., 2 Eq. Cas. 659; 33 Yale Law Journal, pp. 420, 421.

In the case at bar, the United States is not suing in its capacity as *parens patriae,* i. e., to assert a right affecting public welfare, but in its private capacity as a property owner. *Denver, etc. R. R. Co.* v. *United States,* 241 Fed. 614.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This case comes here upon a certificate from the Circuit Court of Appeals for the Second Circuit, stating more at length the following facts. The Luckenbach Steamship Company on behalf of itself and the other owners libelled the barque Thekla in admiralty for a collision with the steamship F. J. Luckenbach. The owners of the Thekla moved under the old fifty-third admiralty rule for a stay until the libellant should give security to respond in damages as claimed in the cross libel, and filed a claim, stipulation for value, an answer and a cross bill against the steamer. On October 7, 1918, the motion was granted and the libel and cross libel were consolidated and proceeded as one cause. On June 4, 1919, the United States was made a party libellant upon its motion and stood on the Steamship Company's libel. It filed a claim "without submitting itself to the jurisdiction" of the Court, alleging possession and ownership at the time when the libel was filed. Thereupon a stipulation executed by the United States Shipping Board Emergency Fleet Corporation was filed, which recited that the F. J. Luckenbach was under requisition charter to, and in the possession of the United States, claimant, at the time of the collision; that the liability, if any, was

that of the United States, acting through the Corporation, the operator of it; and that the Corporation agreed in case of default on the part of the claimant that execution should issue against its chattels and lands in the sum of $130,000. The condition was that the claimant and Corporation should abide by all orders of the Court and pay the amount awarded by the final decree. On October 3, 1919, the Steamship Company on behalf of itself and other owners excepted to the cross libel on the ground that the steamship being under charter to the United States the matters alleged in the cross libel were not within the jurisdiction of the Court. At the trial it appeared that the United States was owner *pro hac vice,* as alleged, using the vessel for war service, and that the Luckenbach alone was in fault, a finding affirmed by the Circuit Court of Appeals. A decree was entered against the claimant and stipulator for the damages, $120,619.71, with interest and costs.

The first question certified is: Was the District Court empowered by law to render the decree entered? In answer the Government relies upon the proposition established by *The Western Maid,* 257 U. S. 419, that the collision inflicted no legal wrong upon the Thekla, and the further proposition that generally speaking a claim that would not constitute a cause of action against the sovereign cannot be asserted as a counterclaim; *Illinois Central R. R. Co.* v. *State Public Utilities Commission of Illinois,* 245 U. S. 493, 504, 505; see also *Nassau Smelting & Refining Works* v. *United States, ante,* 101; and that a cross libel is governed by the same rule. *Washington-Southern Navigation Co.* v. *Baltimore & Philadelphia Steamboat Co.,* 263 U. S. 629.

We do not qualify the foregoing decisions in any way, but nevertheless are of opinion that the District Court had power to enter a decree for damages. When the United States comes into Court to assert a claim it so

far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter. The absence of legal liability in a case where but for its sovereignty it would be liable does not destroy the justice of the claim against it. When the question concerns what would be paramount claims against a vessel libelled by the United States were the vessel in other hands, the moral right of the claimant is recognized. *The Western Maid,* 257 U. S. 419, 433, 434. *The Siren,* 7 Wall. 152. *The Athol,* 1 Wm. Rob. 374, 382. The doubt in this case arises not from the absence of a maritime lien, but from the fact that the counter-claim is not against the Thekla libelled by the United States but for affirmative relief against a different vessel, the F. J. Luckenbach. There certainly is a strong argument for regarding this claim as standing no better than those dealt with in the cases cited by the Government. But we are of opinion that this is to construe the submission of the United States too narrowly. A collision involves two vessels. The trial of such cases in the ordinary course is upon libel and cross libel, consolidated under authority of statute. Rev. Stats. § 921. *The North Star,* 106 U. S. 17. If both parties were in fault the entire damage would be divided equally between them, and it could not be argued that the United States could avoid the consequences of the rule although the damage to the other vessel might bar its recovering anything. This shows that the subject matter is the collision, rather than the vessel first libelled. *Bowker* v. *United States,* 186 U. S. 135, 139. The libel in such a case is like a bill for an account, which imports an offer to pay the balance if it should turn out against the party bringing the bill. *Columbian Government* v. *Rothschild,* 1 Sim. 94, 103. *Goldthwait* v. *Day,* 149 Mass. 185, 187.

The reasons that have prevailed against creating a government liability in tort do not apply to a case like

this, and on the other hand the reasons are strong for not obstructing the application of natural justice against the Government by technical formulas when justice can be done without endangering any public interest. As has been said in other cases the question of damages to the colliding vessel necessarily arose and it is reasonable for the Court to proceed to the determination of all the questions legitimately involved, even when it results in a judgment for damages against the United States. *The Nuestra Señora de Regla,* 108 U. S. 92. *The Paquete Habana,* 189 U. S. 453, 465, 466. We gather that our conclusion accords with the opinion of the English Courts. *The Newbattle,* 10 P. D. 33. *The Tervaete,* [1922] P. 259, 272. It is said that there is no statute by which the Government accepted this liability. It joined in the suit, and that carried with it the acceptance of whatever liability the courts may decide to be reasonably incident to that act.

It follows from what has been said, without the need of going further, that the stipulation ordered before the United States made itself a party, is valid, and that interest and costs can be recovered from the Fleet Corporation. See *Sloan Shipyards Corporation* v. *United States Shipping Board Emergency Fleet Corporation,* 258 U. S. 549. Interest was allowed against the United States in *The Nuestra Señora de Regla* and *The Paquete Habana, supra,* and interest and costs by the judgment affirmed in *Porto Rico* v. *Ramos,* 232 U. S. 627.

*Answer to Question 1: Yes.*