## In re FLATO.

District Court, S. D. New York.

Sept. 30, 1946.

Robert H. Epstein, of New York City, for trustee.

John F. X. McGohey, U. S. Atty., of New York City (Samuel Rudykoff, of New York City, of counsel), for the United States.

CAFFEY, District Judge.

On petition to review an order of the Referee, dated April 25, 1946, which per--

mitted an amendment of a claim for income tax, filed by the United States, by substituting for the year 1939 the year 1938, and which also dismissed certain set-offs, asserted by the Trustee against another claim of the United States for other unpaid taxes, for lack of jurisdiction in the court of bankruptcy.

Flato was adjudicated a bankrupt on May 28, 1943. On July 22, 1943, the United States Collector of Internal Revenue for the Third District of New York filed a proof of claim for $6045.21. One of the items therein was described as unpaid income tax for the year 1939, amounting to $4847.47, and including interest in the sum of $1059.71. The totals are not disputed, but the year should have been 1938, as the bankrupt did not owe any income tax for 1939 but did for 1938. The parties have stipulated that the tax was erroneously and inadvertently stated as being for 1939 instead of 1938. The Trustee moved to expunge the claim on the ground that the bankrupt was not indebted therefor. The Collector made a cross motion to amend the claim by substituting the year 1938 for the year 1939. The Referee granted the latter motion.

The Trustee's objection is that to permit the amendment is to permit the filing of an entirely new claim, of which no notice had been previously given, after the statutory period for filing claims had expired, for the reason that the income tax law treats each taxable year as a separate unit and, therefore, unpaid income taxes for one year constitute a separate and distinct cause of action from unpaid income taxes for another year.

It is undoubtedly true, as the court said in In re G. L. Miller & Co., Inc., 2 Cir., 45 F.2d 115, 116, that "the trend of modern decisions is to allow great liberality in the amendment of claims in bankruptcy." But the court went on to say:

"They [the authorities] permit amendments to correct defects of form, or to supply greater particularity in the allegations of fact from which the claim arises, or to make a formal proof of claim based upon facts which, within the statutory period, had already been brought to the notice of the trustee by some informal writing or some pleading in the bankruptcy proceedings (citing cases). It is quite another matter to use an 'amendment' as a device for filing after the statutory period a claim based upon a cause of action of which no notice whatever had been given the trustee by anything previously filed. * * * If the limitation imposed by section 57, sub. n, as amended by Act May 27, 1926, § 13 [11 U.S.C.A. § 93, sub. n,] is to be given any reasonable meaning, we think it must be true that the right to amend can go no further than to permit the bringing forward and making effective of that which in some shape was asserted in the original claim."

Here, no notice had been given to the Trustee of any claim for unpaid income taxes for 1938. Nevertheless, the Referee held that the insertion of 1939 instead of 1938 in the proof of claim was an inadvertent error; that, under Rule 60(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it might be corrected at any time; and that, where justice so requires, such correction should be permitted, even if it sets up a different claim.

This is, however, to invoke the Rules to override the decisions of the courts. The Rules govern procedure only (Rule 1), even if they apply to proceedings in bankruptcy, Rule 81(a) (1), and not matters of substantive law. They cannot be invoked to enlarge the meaning and scope of Section 57, sub. n, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. n. In any event there is nothing to indicate that the use of 1939 instead of 1938 was a mere clerical mistake or inadvertent error, except the stipulation of the parties that the tax was erroneously and inadvertently so described. But neither can such a stipulation empower this court to permit an amendment which all previous decisions of the courts forbid.

In his opinion the Referee seems also to have relied on In re Morgen Drug Co., Inc., D.C.S.D.N.Y., 42 F.Supp. 345. But the facts in that case were quite different. Moreover, it is not in point here, for, as

the court said (p. 346, bottom of right column), "In effect, therefore, the essence, nature or substance of the claim has not been changed." There the City of New York filed a proof of claim for sales taxes for the years 1934-1940 in a lump sum of $1000 and for business taxes for the years 1933-1939 in a lump sum of $500. The claim expressly stated (p. 346 left column) that "Notice is hereby given that the Comptroller of the City of New York reserves all of the City's rights to make a determination of additional tax in accordance with the provisions of the Local Laws, and file an additional claim therefor." After the statutory period had expired the City filed an amended proof of claim for sales taxes from May 1, 1936, to March 12, 1940, in the sum of $2346.94, and for business taxes for various periods from May 1, 1936 to April 30, 1937, and for each of the years 1937, 1938 and 1939 in the sum of $283.81 (p. 346 right column). The Referee held (p. 347 left column) that, in so far as the amended claim increased the amount claimed for sales taxes, it was barred, as being a new claim, but the District Court reversed and allowed the amended claim.

That a claim for unpaid income taxes of one year is a different claim from one for unpaid income taxes of another year and gives rise to a different cause of action seems clear. The income tax laws have always provided for the assessment and collection of taxes upon the income of each taxable year separately. In United States v. Sullivan, 2 Cir., 98 F.2d 79, 80 right column, it was held that an attempt to evade income taxes for one year was a separate offense from an attempt to evade the tax for a different year. So, assessment and collection of income tax may be barred by the statute of limitations for one year but not for another year. Moore v. Commissioner, 37 B.T.A. 378, 384-5.

The Referee erred in allowing the amendment of the proof of claim by changing the year 1939 to the year 1938.

On August 17, 1943, the Collector filed another proof of claim for miscellaneous taxes, aggregating, with interest, $31,733.51, the amount and legality of which are not disputed. The Trustee asserted two set-offs against these taxes.

The first set-off was for the sum of $4410.92, representing income tax for the year 1937, alleged to have been overpaid. The second was for the sum of $1500, being a payment by the bankrupt, when he was admittedly insolvent, on account of the income tax liability for 1937 of Flato, Inc., a corporation of which he was president and treasurer.

The Referee held that, as a court of bankruptcy, he lacked jurisdiction to determine these set-offs. He held that section 68, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 108, sub. a, does not apply to the Government, a sovereign, since it is not named therein.

This section, which has been in force since 1898 without change, provides as follows:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

In the case of In re Clayton Magazines, Inc., 2 Cir., 77 F.2d 852, it was held that the bankruptcy court has the power to set off an overpayment of income tax for one year against a claim for unpaid income tax of another year. There the Collector filed a proof of claim for additional income tax for 1931. Later he filed a second proof of claim for additional income tax for 1926 in the sum of $3151.65. Later, the Collector also admitted that no additional tax was due for 1931 and that in fact the bankrupt had overpaid his tax for that year in the amount of $3741.47. This tax had been paid in four installments. The Trustee filed a claim for refund but, at the time it was filed, the two years statutory period of limitations had elapsed as to all the installments paid except the last. The Referee and the District Court granted the Trustee's application to set off the full amount of the overpayment for 1931 against the claim for 1926. On appeal by the Government the Court of Appeals allowed the set-off, but only to the extent of the last installment. This rested on the

ground that until the claim for refund was filed the Government was under no legal obligation to refund any part of the 1931 tax. The court also pointed out that the Internal Revenue Acts provided that, after an adjudication in bankruptcy, no petition for review might be filed by the Trustee in the Board of Tax Appeals and (at page 854 left column about half way down and paragraph in left column beginning near bottom) it was said:

"These provisions make for consistency with § 64, [sub.] a of the Bankruptcy Act, 11 U.S.C.A. § 104, [sub.] a, and if a deficiency is assessed after bankruptcy, the bankruptcy courts have exclusive jurisdiction of new claims for taxes. * * *

"By pressing the set-off, the appellee is, in effect, asking an affirmative judgment against the United States. It is a set-off based on a cause of action which is separate and distinct from that upon which the original suit is based and the conditions of allowing the claim against the sovereign must be observed. United States v. Nipissing Mines Co., 2 Cir., 206 F. 431; North Dakota-Montana Wheat Growers' Ass'n v. United States, 8 Cir., 66 F.2d 573, 92 A.L. R. 1484."

In the Clayton case the set-off claimed and allowed was in a liquidated amount, for the Collector admitted the fact and the amount of the overpayment. Here, however, the first set-off asserted is in an unliquidated amount. The Government does not admit that there has been any overpayment by the bankrupt of his 1937 tax. Whether there was any overpayment depends upon whether the bankrupt correctly reported the items making up his taxable income and the allowable deductions therefrom—matters as to which the Government and the Trustee disagree.

Moreover, let it be noted that in Charnley v. Sibley, 7 Cir., 73 F. 980, 982, it was held that:

"A claim is liquidated only when the amount of it has been determined, or the data settled upon which the amount can be calculated."

The set-off asserted here is, therefore, based on an unliquidated claim and the question is whether a court of bankruptcy, in the exercise of its statutory and equitable jurisdiction, has power under Section 68, sub. a, to hear and determine a set-off for an unliquidated amount, which necessarily involves a liquidation of the claim, as authorized by Sec. 57, sub. d, 11 U.S.C. A. § 93, sub. d.

It would seem that, by the express language of the section, it has such power, for the section provides that in all cases of mutual debits, or credits the account shall be stated and one debt set off against the other. This is a very broad direction.

Set-offs of unliquidated claims by a trustee of a bankrupt against a claim filed by a creditor of the bankrupt have been allowed in a number of cases, though (except in the Harper case) without discussion of the authority of the court to do so. The power seems generally to have been assumed to exist. See, for example, In re Pottier & Stymus Co., 2 Cir., 262 F. 955, 956; In re Royce Dry Goods Co., 8 Cir., 133 F. 100, 102-104; and In re Harper, 2 Cir., 175 F. 412, 417-427.

Next, let us examine Cumberland Glass Mfg. Co. v. De Witt, 237 U.S. 447, 35 S.Ct. 636, 639, 59 L.Ed. 1042. Without discussion by the majority of the court, it was assumed that a creditor of the bankrupt has the right under Sec. 68, sub. a to have set off an unliquidated claim for damages for breach of its contract against its claim upon a note of the bankrupt. The greater part of the court ruled that the section was not self-executing; i.e., that there was no automatic set-off, but that it must be invoked by the creditor. The minority held that, when liquidated, the creditor had the right to set off the unliquidated claim against the note and that it was the duty of the bankruptcy court, on its own motion, to liquidate the claim and to set it off. This is what the court said at page 455:

"The matter is placed within the control of the bankruptcy court, which exercises its discretion in these cases upon the general principles of equity."

So in North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., 152 U.S. 596, 615, 14 S.Ct. 710, 715, 38 L.Ed. 565, in allowing an unliquidated claim for damages for breach of a contract to be set off against

a liquidated debt in a garnishment proceeding, the holding was as follows:

"Cross demands and counterclaims, whether arising out of the same or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced, by way of set-off, whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice. * * *

"The adjustment of demands by counterclaim or set-off, rather than by independent suit, is favored and encouraged by the law, to avoid circuity of action and injustice."

It is true that in none of these cases was the Government the creditor against whose claim the set-off was asserted. But if an admitted claim, i.e., a liquidated claim for income taxes overpaid in one year, may be set off against a claim of the Government for income taxes unpaid of another year, it is not apparent why the unliquidated claim for taxes overpaid here may not likewise be set off; provided, of course, that the exact amount is proven, i.e., liquidated.

The Referee thought otherwise. However, his attention does not seem to have been called to the Clayton case, supra, or to the other cases mentioned. In support of his conclusion he referred to In re Monongahela Rye Liquors, Inc., 3 Cir., 141 F.2d 864. In that case the Commonwealth of Pennsylvania filed proofs of claim for unpaid taxes against the bankrupt's estate. The Trustee asserted the right to set-offs or recoupments for liquor sold and delivered to the Pennsylvania Liquor Control Board, a State agency. The court denied the set-offs on two grounds, namely: (1) That the Trustee had not complied with the State law which provided that proceedings for the enforcement of such claims should be brought before the Board of Arbitration of Claims and (2) that, as the Trustee's claims were manifestly unrelated to the Commonwealth's tax claims, the bankruptcy court was without jurisdiction to entertain them in the absence of the Commonwealth's consent to such procedure (p. 869).

As to (1) the opinion is in harmony with the Clayton case, but as to (2) I think the opinion is contrary to the great weight of authority. See the North Chicago Rolling-Mill case, supra. In any event, I feel that I should follow the Clayton case.

The Referee also held that courts of bankruptcy are courts of limited, specified jurisdiction only and have not been endowed with power to adjudicate claims, counterclaims or set-offs against the sovereign, which can be adjudicated only in the tribunals which Congress has designated. He relied on three cases. These are Nassau Smelting & Refining Works v. United States, 266 U.S. 101, 45 S.Ct. 25, 69 L.Ed. 190; United States v. Skinner & Eddy Corp., 9 Cir., 35 F.2d 889; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888.

The first two cases on which the Referee relies hold that, when Congress has authorized a suit by a citizen upon a particular kind of claim against the Government and at the same time has provided that such suit may be brought only in a designated court, another court has no jurisdiction, in a suit brought by the Government against the citizen, to entertain the claim, either by way of counterclaim or by way of set-off. In the Nassau Smelting case 266 U.S. at page 106, 45 S.Ct. 25, 69 L.Ed. 190 the court said:

"The objection to a suit against the United States is fundamental, whether it be in the form of an original action, or a set-off, or a counterclaim. Jurisdiction in either case does not exist, unless there is specific congressional authority for it."

In the Shaw case, as a set-off against a claim by the United States and as authorized by a Michigan statute, a Probate Court in that State had allowed such a claim to be filed by the United States upon a judgment against the administrator, a claim of the administrator upon a judgment against the decedent which the United States had assumed, and had entered a decree that the United States was indebted to the estate for the difference. The administrator did not contend that the decree was enforceable against the United States but took the position that it was a final determination of the rights of the parties. The court held that it was such a final determination if the Probate Court had jurisdiction to ren-

der the decree, but held that it lacked such jurisdiction. 309 U.S. at page 499, 60 S.Ct. 659, 660, 84 L.Ed. 888, it said that the question was "whether the United States by filing a claim against an estate in a state court subjects itself, in accordance with local statutory practice, to . a binding, though not immediately enforceable, ascertainment and allowance by the state court of a cross-claim against itself." The court also said:

"Whether that jurisdiction exists depends upon the effect of the voluntary submission to the Michigan court by the United States of its claim against the estate. As a foundation for the examination of that question we may lay the postulate that without specific statutory consent, no suit may be brought against the United States. No officer by his action can confer jurisdiction. Even when suits are authorized they must be brought only in designated courts. * * * A sense of justice has brought a progressive relaxation by legislative enactments of the rigor of the immunity rule. * * * When authority is given, it is liberally construed" 309 U.S. pp. 500, 501, 60 S.Ct. 659, 84 L.Ed. 888.

"Respondent contends this immunity extends, however, only to original suits; that when a sovereign voluntarily seeks the aid of the courts for collection of its indebtedness it takes the form of a private suitor and thereby subjects itself to the full jurisdiction of the court." 309 U.S. pp. 501, 502, 60 S.Ct. 659, 84 L.Ed. 888.

"Against the background of complete immunity we find no Congressional action modifying the immunity rule in favor of cross-actions beyond the amount necessary as a set-off." 309 U.S. p. 502, 60 S.Ct. 659, 84 L.Ed. 888.

"The language quoted above (from United States v. Eckford, 6 Wall. 484, 491, 18 L.Ed. 920) means no more than that no judgment may be entered against the government even though the court has ascertained, through its processes that the government is actually indebted to the defendants. The judgment should be limited to a dismissal of the government's claim." 309 U.S. p. 504, 60 S.Ct. 659, 84 L.Ed. 888.

In United States v. United States Fidelity Guaranty Co., 309 U.S. 506, 512, 60 S.Ct. 653, 656, 84 L.Ed. 894, the court said:

"In United States v. Shaw we hold that cross-claims against the United States are justiciable only in those courts where Congress has consented to their consideration."

The Referee conceded that what the court said in the Shaw case seems "to support a suit in the form of a set-off." That its opinion is to be so interpreted was held by Judge Lindley in the District Court for the Eastern District of Illinois in Mutual Metal Mfg. Co., United States for Use of, v. Biggs, 46 F.Supp. 8, 11 left column middle of page, where he said:

"If a suit is brought by the United States against a defendant for an amount allegedly due the United States, defendant may properly set up by way of defense any amount owing him to the extent of such claim. The court, however, has no jurisdiction to render an affirmative judgment against the United States on a counterclaim."

As I read the Shaw case, it recognizes the general right to set off in the proper forum against a claim of the United States a cross-claim to the extent, but only to the extent, that the cross-claim does not exceed that of the Government. The judgment was necessarily reversed, both because the Probate Court in Michigan had no jurisdiction to entertain a claim against the United States and because, if it had such jurisdiction, the decree went too far in adjudging that the Government was indebted to the estate. Whether the opinion can also be interpreted as indicating that, when the United States files a claim against an estate in a local State court, which alone has jurisdiction over the estate, the court has power to entertain a cross-claim to the extent of the claim of the United States, as authorized by the State law, need not be considered, for the proceedings here are in a Federal court upon which Congress has conferred sole and exclusive jurisdiction over the administration of bankrupt estates, including the allowance of claims. United States Fidelity & Guaranty Co. v. Bray, 225 U.S. 205, 217, 32 S.Ct. 620, 56 L.Ed. 1055.

The Bankruptcy Act provides a complete, and the only, method for speedy and expeditious distribution of a bankrupt's assets among his creditors. All creditors, including the United States, are required to file proofs of their claims with the Referee. Sec. 57, sub. n, 11 U.S.C.A. § 93, sub. n. Notice must be given to all creditors of the last day fixed for the filing of objections to the bankrupt's discharge, including the United States Attorney. Sec. 58, sub. b, 11 U.S.C.A. § 94, sub. b. Notice of the first meeting of creditors shall be given to the Commissioner of Internal Revenue and to the Collector of Internal Revenue and a copy of the order of adjudication shall also be mailed to the Commissioner of Internal Revenue. 11 U.S.C.A. § 94, sub. e. Taxes due to the United States shall have certain priority. Sec. 64, 11 U.S.C.A. § 104. And debts owing to the United States as a penalty or forfeiture shall be allowed only for the amount of the pecuniary loss sustained. Sec. 57, sub. j, 11 U.S.C.A. § 93, sub. j.

It is clear that the Act applies to the United States. The fact that the United States is not specifically mentioned in Sec. 68, 11 U.S.C.A. § 108, relating to set-offs, does not mean, as the Referee held, that it is not subject, like all other creditors, to the provisions of the section. So to hold would mean that Sec. 57, sub. f, 11. U.S.C.A. § 93, sub. f, providing that objections to claims shall be determined by the court, does not apply to the United States, for the United States is not specifically mentioned in it—a manifest absurdity.

It is clear that, when Congress enacted the Bankruptcy Act and required the United States to file with the Referee proof of any claim that it might have against the bankrupt, or lose its right to be paid out of the bankrupt's assets, it intended to authorize the Referee, in determining whether the claim should be allowed in full or not, to determine all objections of the Trustee to the claim, including set-offs, which would result in reducing the amount of the claim. To that extent Congress must be held to have authorized suit against the United States in the bankruptcy court. Otherwise the Trustee would be required to sue the United States in another court and, if successful, the proceeds would become general assets of the estate. The net result would be the same as though the claim had been allowed as a set-off but the final liquidation of the estate would be unduly delayed.

■ It seems to me that proceedings in bankruptcy relating to the distribution of the assets and, as a necessary part thereof, the determination of the validity and amount of claims filed, are analogous to proceedings in collision cases in the admiralty. In United States v. The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313, it was held that when the United States, as owner pro hac vice of the steamship F. J. Luckenbach, asserted a claim for damages due to a collision with the barque Thekla, which had filed a cross-libel, and it was found that the F. J. Luckenbach was solely at fault, the court had power to enter a decree against the United States on its stipulation for value for damages sustained by the Thekla. The proceedings were in rem and the subject matter was the collision. In bankruptcy the proceedings are likewise in rem and the subject matter is the distribution of the res. But the bankruptcy court has no power to render a judgment against any one on a set-off.

After saying that it did not qualify in any way the decision in the Nassau Smelting case, the court spoke as follows, 266 U.S. at pages 339, 340, 45 S.Ct. 113, 69 L. Ed. 313:

"When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter. The absence of legal liability in a case where but for its sovereignty it would be liable does not destroy the justice of the claim against it."

It is true that in the Shaw case this court said 309 U.S. at pages 502-503, 60 S.Ct. 659, 84 L.Ed. 888, that the decision in the Thekla case must be limited to collision cases in the admiralty; but the court did not have occasion to consider whether the reasoning in that case was applicable to bankruptcy proceedings.

■ Accordingly, so much of the order of the Referee as was brought here for review is reversed and the matter is remitted

to him for further proceedings in conformity with this opinion. Settle order on two days' notice.