**UNITED PHILIPPINE LINES, INC. as owner of the M/V PHILIPPINE PRESIDENT QUEZON, Appellee,**

v.

**The SUBMARINE USS DANIEL BOONE (SSBN629), her engines, apparel, etc., in rem, and the United States of America in personam, Appellants.**

**No. 72-2083.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1973.

Decided March 21, 1973.

Robert E. Kopp, Atty., United States Department of Justice (Harlington Wood, Jr., Asst. Atty. Gen., Brian P. Gettings, U. S. Atty., on brief), for appellants.

R. Arthur Jett, Jr., Norfolk, Va. (Waverley L. Berkley, III, and Jett, Berkley, Furr & Heilig, Norfolk, Va., on brief), for appellee.

Before CRAVEN, BUTZNER and WIDENER, Circuit Judges.

CRAVEN, Circuit Judge:

Near high noon on a bright day, with visibility unlimited, the United States' nuclear-powered submarine Daniel Boone (SSBN629) turned into collision course with M/V Philippine President Quezon. Immediately prior to collision, the submarine was proceeding at flank speed (15–16 knots) in usually congested waters (just out of Thimble Shoals Channel) and the Quezon was engaged in picking up a pilot off Cape Henry, Virginia, and was highly unmaneuverable. So found the district court, and his findings are not attacked on appeal.[1] Rightly the district judge concluded that the negligence of the submarine was the sole cause of the collision.

---

1. Perhaps because, curiously, the Mate of the Quezon happened to photograph the approach of the submarine in 8 milimeter color film beginning 45 seconds before impact.

■ Appellant United States presents us with only one issue: whether the United States in its actions below so far took the position of a private suitor as to waive any defense of sovereign immunity regardless of the reciprocity requirements of Section 5 of the Public Vessels Act, 46 U.S.C.A. § 785. We hold that the United States did waive its sovereign immunity and affirm the decision of the district court.

United Philippine Lines, Inc., the owner of the Quezon, began the litigation by filing suit in the district court. The suit filed by United Philippine Lines, Inc., a Philippine corporation, was against the USS Daniel Boone, in rem, and against the United States, in personam. Damages of $450,000.00 were sought. Jurisdiction was founded under the Public Vessels Act, 46 U.S.C. A. § 781 et seq., and alternatively under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq.

In its answer, the United States set up as a defense the lack of the reciprocity required by Section 5 of the Public Vessels Act, 46 U.S.C.A. § 785. Section 5 of the Public Vessels Act provides:

No suit may be brought under sections 781–790 of this title by a national of any foreign government unless it shall appear to the satisfaction of the court in which suit is brought that said government under similar circumstances, allows nationals of the United States to sue in its courts.

46 U.S.C.A. § 785 (1970).

After raising the reciprocity defense, however, the United States sought the joinder of the vessel M/V Philippine President Quezon as a defendant in rem. The government also filed a counterclaim reciting the collision, laying the liability therefor to the Quezon, and seeking damages of $600,000.00. To secure its counterclaim, the United States sought: the arrest of the Quezon, and if that vessel, itself, be not amenable to such attachment, then other property belonging to United Philippine Lines, Inc. be attached; that the claim of the plaintiff be dismissed; and, that judgment be entered for the United States.

The district court concluded that these actions by the United States constituted a waiver of sovereign immunity making it unnecessary to reach the question of reciprocity under Section 5 of the Public Vessels Act. We agree.

■ When the United States comes into an admiralty court and asks the "court to complete the adjudication of a cause which was rightfully begun in that jurisdiction, we think the government is bound by the submission . . . ." United States v. The Steamer Nuestra Senora de Regla, 108 U.S. 92, 103, 2 S.Ct. 287, 293, 27 L.Ed. 662 (1883). By asking that justice be done with regard to a maritime collision, the United States becomes subject to the rule set forth in Luckenbach Steamship Co. v. The Thelka, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313 (1924).[2]

In *The Thelka* a libel was filed against the Thelka by the Luckenbach Steamship Company for damages to one of its ships caused by a collision with the Thelka. The ship of the Luckenbach Company involved in the collision was under requisition to and being used by the United States at the time of the collision. Upon its own motion the United States became a party to the pending suit and stood on the libel of the steamship company.

In upholding an affirmative judgment against the United States, the Supreme Court stated:

When the United States comes into court to assert a claim, it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter.

. . . . . .

The reasons that have prevailed against creating a government liabili-

2. United States v. The Australia Star, 172 F.2d 472 (2d Cir. 1949), cert. denied, 338 U.S. 823, 70 S.Ct. 69, 94 L.Ed. 499 (1949).

ty in tort do not apply to a case like this, and, on the other hand, the reasons are strong for not obstructing the application of natural justice against the Government by technical formulas when justice can be done without endangering any public interest. As has been said in other cases, the question of damages to the colliding vessel necessarily arose, and it is reasonable for the Court to proceed to the determination of all the questions legitimately involved, even when it results in a judgment for damages against the United States. . . . It is said that there is no statute by which the Government accepted this liability. It joined in the suit, and that carried with it the acceptance of whatever liability the courts may decide to be reasonably incident to that act.

266 U.S. at 339–341, 45 S.Ct. at 113.

The United States is in the same position here as it was in *The Thelka.* In seeking dismissal of the plaintiff's claim, an affirmative judgment on its counterclaim, and the arrest of the Quezon, the government has so far taken the position of a private suitor as to waive its sovereign immunity. This results from the peculiar "relationship characteristic of claims for collision in admiralty but entirely absent in claims and cross-claims"[3] in other civil cases.[4]

In view of our holding that the United States has waived sovereign immunity we need not consider whether there is reciprocity sufficient to satisfy Section 5 of the Public Vessels Act. There was, however, strong evidence presented below that the Philippine courts provide United States nationals with the reciprocity required by that section.

Nor do we decide whether without a waiver and without reciprocity an action

such as this may be brought under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq.[5]

Accordingly, for the reasons stated, the decision of the district court is

Affirmed.

---

3. United States v. Shaw, 309 U.S. 495, 502, 60 S.Ct. 659, 662, 84 L.Ed. 888 (1940).

4. 3 Moore's Federal Practice ¶ 13.27 (2d ed. 1972).

5. Section 2 of the Suits in Admiralty Act, 46 U.S.C.A. § 742, as amended in 1960,

would apparently allow such a suit if the section is given a literal interpretation. A literal interpretation of a statute waiving sovereign immunity is generally required. Gulf Oil Corp. v. Panama Canal Co., 407 F.2d 24, 28 (5th Cir. 1969).