**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1105

MCRAE B. SOUTHARD, III,

Plaintiff - Appellant,

versus

PAUL LESTER; OREGON INLET FISHING CENTER,
INCORPORATED,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Elizabeth City.   James C. Fox,
Senior District Judge.   (2:05-cv-00047-F)

Argued:  December 7, 2007          Decided:  January 7, 2008

Before WILKINSON and SHEDD, Circuit Judges, and John Preston
BAILEY, United States District Judge for the Northern District of
West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Jeffrey Franklin Brooke, HUFF, POOLE & MAHONEY, P.C.,
Virginia Beach, Virginia, for Appellant.  Bryan Karl Meals,
MCGUIREWOODS, L.L.P., Norfolk, Virginia; Neil Alvin Riemann,
TAYLOR, PENRY, RASH & RIEMANN, P.L.L.C., Raleigh, North Carolina,
for Appellees.  **ON BRIEF:** Timothy M. Richardson, John R. Braley,
IV, HUFF, POOLE & MAHONEY, P.C., Virginia Beach, Virginia, for
Appellant.  William H. Baxter, II, MCGUIREWOODS, L.L.P., Richmond,
Virginia, for Appellee Paul Lester.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

McRae B. Southard, III, a passenger on a charter fishing boat who was injured when a wave struck the boat, brought this negligence action against Paul Lester and Oregon Inlet Fishing Center, Inc. ("OIFC"). Southard now appeals the district court's orders granting Lester's and OIFC's summary judgment motions and denying his subsequent motion to alter or amend the judgment. Finding no error, we affirm.

I

On November 16, 2002, Southard took a charter fishing trip on the F/V Osprey. The Osprey was captained by Lester, who is an experienced licensed charter boat captain. At that time, Lester averaged approximately 120 charter boat trips annually.

The weather conditions that day were described as being normal. The Osprey left its dock at Oregon Inlet, North Carolina, sometime after 5:30 that morning, and as it headed for the ocean, Lester observed 3-4 foot waves and choppy waters. Consequently, Lester slowed his speed to 18 knots, which is 3-5 knots less than the Osprey's normal 21-23 knot cruising speed. At least one other charter fishing boat passed the Osprey as they headed out.[1]

---

[1]Southard does not contend that Lester was negligent for taking the Osprey out that day. See Brief of Appellant, at 28 (stating that "going out on the day in question was not in and of itself negligent").

Before the Osprey reached the fishing grounds, Lester was alone on the flying bridge, and his mate was in the cabin with the passengers. Lester saw a wave that he estimated to be 8-10 feet high breaking approximately one boat length in front of the Osprey. When Lester saw the wave, he immediately pulled the throttle back to slow down as quickly as he could. However, Lester could not avoid the wave, and the Osprey struck it and came down hard off its steep bank. This caused Southard to be lifted out of his seat in the boat's cabin, and he was seriously injured when he fell back down.

Southard filed this action contending that Lester negligently operated the Osprey and that OIFC is vicariously liable for Lester's negligence. In his complaint, Southard referred to the wave that struck the Osprey as "rough seas and/or a 'rogue wave,'" see J.A. 9, and he contends that it was at least 15 feet high. Lester testified during discovery that although he had seen (from a distance) "very few" waves similar to the one that struck the Osprey, he had never encountered such a wave that caused damage or injury aboard his vessel. J.A. 38.

Lester and OIFC separately moved for summary judgment pursuant to Fed. R. Civ. P. 56, arguing (inter alia) that Southard failed to present sufficient evidence to establish that Lester was negligent. In ruling on the motions, the district court noted the parties' agreement that Southard was required to establish that (1) Lester

4

and OIFC owed him a duty of care, (2) they breached that duty, (3) he sustained an injury, and (4) a causal connection exists between his injury and the breach of duty. The district court then held that Southard failed to establish his negligence claim:

> Plaintiff . . . contends that there is ample evidence demonstrating that Defendant Lester failed to keep a proper lookout and maintain a safe speed and thereby breached his duty of reasonable care. Specifically, Plaintiff contends that if Defendant Lester had maintained a proper lookout and a safe speed, he would have seen the "rogue" wave in advance and would have had time to avoid it. Plaintiff's entire theory, however, rests upon the premise that Defendant Lester could have seen the "rogue" wave in advance. The only evidence in the record with regard to the timing of the "rogue" wave comes from Defendant Lester himself, who testified that the wave was eight to ten feet in height when he first saw it and "was pretty much on top of me."

> Although Plaintiff is free to attack Defendant Lester's credibility, Plaintiff overlooks the fact that Defendant Lester's testimony is the only evidence in the record with regard to the timing and formation of the "rogue" wave. Even Plaintiff's expert witness admits that he does not know where or when the "rogue" wave was formed. Consequently, Plaintiff is essentially asking the fact finder to rely upon sheer speculation and conjectural hypothesizing to conclude that Defendant Lester breached his duty of reasonable care when he failed to avoid the "rogue" wave. This cannot propel Plaintiff past summary judgment.

J.A. 491-92 (internal citations omitted).

Continuing, the district court rejected Southard's argument that the "Pennsylvania Rule" is applicable in this case. That rule holds that when "a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, . . . the burden rests upon the ship of showing not merely that her

5

fault might not have been one of the causes, or that it probably was not, but that it could not have been." The Pennsylvania, 86 U.S. (19 Wall.) 125, 136 (1873). Southard argued that this rule applies because Lester allegedly violated various provisions of the International Regulations for Preventing Collisions at Sea (1972) ("International Regulations"), which are adopted by 33 U.S.C. § 1602. However, the district court concluded that the International Regulations - and consequently the Pennsylvania Rule – are inapplicable because no "collision" occurred in this case.

For these reasons, the district court granted the summary judgment motions. Southard thereafter moved to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). The district court denied this motion, holding that Southard merely disagreed with the summary judgment order and, therefore, had not established sufficient grounds for relief under Rule 59(e).

II

Southard now appeals the district court's orders. In challenging both orders, Southard argues that the district court erred by failing to apply the International Regulations and Pennsylvania Rule, and by concluding that he otherwise failed to present sufficient evidence to withstand summary judgment.

"We review the district court's order granting summary judgment de novo, viewing the facts in the light most favorable to,

6

and drawing all reasonable inferences in favor of, the nonmoving party." Garofolo v. Donald B. Heslep Assocs., Inc., 405 F.3d 194, 198 (4th Cir. 2005). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

We review for abuse of discretion the district court's decision on the Rule 59(e) motion to alter or amend the judgment. Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396, 402 (4th Cir. 1998). "Although Rule 59(e) does not itself provide a standard under which a district court may grant a motion to alter or amend a judgment, we have . . . recognized that there are three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Id. at 403.

Having reviewed, de novo, the record and the applicable law, and having had the benefit of oral argument, we affirm the grant of

summary judgment substantially on the reasoning of the district court.  Specifically, we hold that the International Regulations and the Pennsylvania Rule are inapplicable in this case because the Osprey was not involved in a "collision."  See, e.g., Luckenbach S.S. Co. v. The Thekla, 266 U.S. 328, 340 (1924) ("A collision involves two vessels.").  We further hold that in light of the evidence in the record concerning the timing and formation of the wave that struck the Osprey and Lester's response to the wave, Southard has failed to present sufficient evidence to establish a genuine issue for trial on his negligence claim.

Given our conclusions regarding the summary judgment motion, we also hold that the district court did not abuse its discretion in denying Southard's Rule 59(e) motion.  Accordingly, we affirm the order denying that motion as well.[2]

AFFIRMED

---

[2]In light of our disposition, we need not address Lester and OIFC's argument that Southard assumed the risk of his injury, or OIFC's argument that it cannot be held vicariously liable for Lester's conduct.