# WASHINGTON TERMINAL COMPANY *v.* DISTRICT OF COLUMBIA.

# DISTRICT OF COLUMBIA *v.* WASHINGTON TERMINAL COMPANY.

RAILROADS; EVIDENCE; STATUTES; STREETS AND HIGHWAYS; CONSTITU-
TIONAL LAW; MUNICIPAL CORPORATIONS; PLEADING.

1. Where an act of Congress requires a railroad company to construct its
   tracks either above or below the streets, alleys, avenues, and public
   ground, the court will assume, in the absence of a showing to the
   contrary, that the law has been obeyed; and that, so far as the com-
   pany is concerned, grade lines have been abolished.

2. In construing a statute, the court will look to conditions existing
   when it was enacted, and from such conditions determine what must
   have been in the mind of the legislature.

3. A thing may be within the letter of a statute and yet not within the
   statute, because not within its spirit or within the intention of its
   makers.

4. A guide to the meaning of a statute is found in the evil which it is
   designed to remedy; and for this the court properly looks to con-
   temporaneous events, the situation as it existed, and as it was pressed
   upon the attention of the legislative body.

5. An act of Congress requiring railroad companies to pay the municipal-
   ity for the lighting of the streets and avenues upon which their tracks
   are laid, when enacted at the time when all railroad tracks within
   the municipality were on grade with the streets and avenues, and
   which was intended to protect the public, cannot be enforced many
   years after its enactment, against a company which had, by a subse-
   quent enactment, been required to construct its tracks above grade,
   and had done so, thus removing the danger which the first act was
   intended to obviate.    (Construing the acts of Congress of March 3,
   1883, 22 Stat. at L. 466, chap. 95, and May 26, 1908, 35 Stat. at L.
   287, chap. 198.)

6. The court will not take judicial notice of the relation of a railroad

company's line to the streets of the municipality, of the necessity for extra lighting for the protection of the public, or of the dangers to the public, if any, attendant upon the operation of trains over the company's road.

7. The burden is upon a railroad terminal company which assails a statute requiring it to pay the municipality for the lighting of streets and avenues over and along which its tracks run, as depriving it of its property without due process of law, and beyond the constitutional and legal limitations of the police power,—to show as matter of fact the absence of public necessity for the passage of the act.

8. A demurrer to a declaration in a suit against the Washington Terminal Company by the District of Columbia, to recover the sum expended by the District of Columbia for lighting the streets and avenues along the lines of the terminal company's tracks, under the act of Congress of May 26, 1908 (35 Stat. at L. 287, chap. 198), requiring the company to pay to the District of Columbia for the lighting of the streets "over and under which its right of way may cross, as well as for the lighting of those streets, avenues, alleys, and grounds bordering on its right of way," will not be sustained when based upon the alleged unconstitutionality of the statute. Whether it is necessary for the public protection to light tracks above and below grade of the streets cannot be determined as a matter of law, but involves a question of fact.

9. The taking effect of a statute as a whole, or of parts of it, may be deferred, either by the terms of the act itself, or by another act in the light of which it is construed.

10. General legislation in an appropriation act of Congress is to be construed as if it had been embraced in a separate act; and unless there is something in the appropriation act, or in some other statute, fixing the time when such a general provision shall take effect, it will take effect from the approval of the act, although the appropriated moneys are not available until a subsequent date.

Nos. 2174 and 2175.    Submitted December 5, 1910.    Decided January 3, 1911.

HEARING on cross appeals by the plaintiff and the defendant in an action by the District of Columbia upon a statute, from a judgment of the Supreme Court of the District of Columbia, sustaining a demurrer to one of the counts of the declaration, and overruling it as to the second count.        *Affirmed.*

The Court in the opinion stated the facts as follows:

This action was brought in the supreme court of the District of Columbia by the District of Columbia, hereafter referred to as the District, against the Washington Terminal Company, to recover the sum of $3,025.42 for moneys paid by the District for lighting certain streets along the lines of the terminal company. The period for which payment was made extended from January 1st to September 1st, 1908.

. The declaration is in two counts. In the first count, the claim is for the sum of $1,983.38, the expense of lighting from January 1st to June 1st, 1908. The right of recovery on this count is based upon a provision of the act of Congress of March 3, 1883 (22 Stat. at L. 466, chap. 95), as follows: That "hereafter all railroad companies using engines propelled by steam shall pay to the District for the lighting of streets, avenues, alleys, and grounds through which their tracks may be laid, under the direction and control of the Commissioners; and in case of default of payment of such bills, actions at law may be maintained by the District of Columbia against said railroad companies therefor."

In the second count, the amount claimed is $1,042.04, the cost of lighting from June 1st to September 1st, 1908. The right of recovery is based upon a provision of the act of Congress of May 26, 1908 (35 Stat. at L. 287, chap. 198), as follows: "That hereafter the Washington Terminal Company, its successors or transferees, shall pay to the District for the lighting of the streets, avenues, alleys, and grounds over and under which its right of way may cross, as well as for the lighting of those streets, avenues, alleys, and grounds bordering on its right of way, under the direction and control of the Commissioners; and in case of default of payment of such bills, actions at law may be maintained by the District of Columbia against said terminal company or its successors or transferees therefor."

The company demurred to both counts of the declaration. The points of law noted in support of the demurrer, and upon

which counsel for the company here rely, are, in substance, as follows:

1st. That the sections of the acts of Congress above quoted are unconstitutional so far as the terminal company is concerned.

2d. That the act of Congress of May 26, 1908, relied upon in the second count of the amended declaration, did not become effective and law until and including the first day of July, 1908.

3d. That the defendant, the terminal company, under the acts of Congress creating it and clothing it with certain powers, was not granted the right to lay any of its tracks through any of the streets, avenues, or grounds of the District, but that, under said legislation, the company was required to construct its tracks either over or under said streets, avenues, alleys, and grounds.

4th. That the defendant company is not a railroad company within the meaning of the act of Congress of March 3, 1883, or subject to the provisions of said act.

The court below sustained the demurrer as to the first count, and overruled it as to the second. Judgment was entered accordingly, from which the respective parties have appealed to this court. The appeal of the company and the cross appeal of the District will be considered together.

*Mr. George E. Hamilton* and *Mr. John W. Yerkes* for the Washington Terminal Company.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. Francis H. Stephens,* Assistant, for the District of Columbia.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

In logical order, the first question presented is whether the act of 1883 can be applied to the Washington Terminal Company. The terminal company was required to construct its lines and maintain them in conformity with the acts of Con-

gress approved February 12, 1901 (31 Stat. at L. 774, chap. 354), and February 28, 1903 (32 Stat. at L. 909, chap. 856). The statutes required the company to construct its tracks either above or below the streets, alleys, avenues, or public grounds of the District. In the absence of any suggestion to the contrary, we must assume that the law has been obeyed, and that, so far as the company is concerned, grade lines have been abolished.

The act of 1883 was enacted to meet the then-existing conditions. The railroads entering the city had their tracks at or near the street grade. The danger to the public from the operation of trains was much greater than under the present system imposed upon the terminal company. In applying the statute, we may look to the conditions existing when the act was passed, and from that determine what must have been in the minds of the lawmakers. "But courts, in construing a statute, may, with propriety, recur to the history of the times when it was passed; and this is frequently necessary in order to ascertain the reason as well as the meaning of particular provisions in it." *United States* v. *Union P. R. Co.* 91 U. S. 72, 23 L. ed. 224. Applying this familiar rule to the present case, we find the physical conditions existing at the time of the passage of the act of 1883 entirely changed in so far as they apply to the terminal company. It was this physical condition alone that called for the enactment of the law. Statutes of this character are to be strictly construed in their application, and it would be equivalent to the assumption of legislative power for the court to hold that this act applies to railroads operated above and below the street grades a sufficient distance to clear the public using the streets. "It is a familiar rule that a thing may be within the letter of the statute, and yet not within the statute, because not within its spirit, nor within the intention of its makers. * * * Again, another guide to the meaning of a statute is found in the evil which it is designed to remedy; and for this the court properly looks at contemporaneous events, the situation as it existed, and as it was pressed upon the attention of the legislative body." *Church of the Holy Trinity* v.

*United States,* 143 U. S. 457, 36 L. ed. 226, 12 Sup. Ct. Rep. 511. Applying these rules to this case, it must be held that the terminal company, whose existence is due to the manifest desire of Congress to obviate the conditions and remedy the dangers which called the act of 1883 into existence, is not within the purview of that act.

Considering the cause of action set forth in the second count of the declaration, it is contended that the act of Congress of May 26, 1908, is in conflict with the provisions of the 5th Amendment to the Constitution of the United States, in that it deprives the terminal company of its property without due process of law, takes private property for public use without due compensation, and is beyond the constitutional and legal limitations of the police power. The merit of this contention, which seems to be a serious one, is not reached by the demurrer. At the threshold, we are confronted by a question of fact. Undoubtedly, if, in the operation of the terminal company's lines of railroad, a danger exists from which the public is not adequately protected by the lighting of the streets in a manner commensurate with the needs of the city if the railroad were not present, the company could be compelled, through the exercise of the police power, to furnish the necessary protection by properly lighting its tracks at the points where the danger exists. This court cannot take notice of the relation of the company's lines to the streets of the city, of the necessity of extra lighting for the protection of the public, or of the dangers to the public, if any, attendant upon the operation of trains over the company's roads. All these are matters of fact not properly presented by the demurrer. The unconstitutionality of the act in question must be made to appear from the lack of necessity for the interference of the police power.

Police regulations are for the protection of the public; and, before a court will declare such a law unconstitutional, the absence of public necessity for its existence must be apparent. The burden is upon the one assailing the law to show that there is, in fact, no necessity for the protection sought to be extended. It was not incumbent, therefore, upon the plaintiff, to show this

in its declaration. It was a matter of defense, and not properly presented by the demurrer. The court cannot presume the lack of necessity for public protection, either from the language of the statute or of the declaration. Neither can the court take judicial cognizance of the present location of the tracks of the defendant company with relation to the adjacent streets. It may well be that the raising and lowering of defendant's tracks above and below the grade of the streets has removed the necessity of lighting the tracks for public protection. But this fact cannot be ascertained from the record, nor is the general situation one properly within the range of judicial cognizance.

The remaining point urged by counsel for the terminal company is that the act of Congress of May 26, 1908, did not become effective until July 1, 1908; and therefore, under the second count of the declaration, there can be no recovery for the expense of lighting during the month of June. The provision of law under which the District is seeking to recover in the second count of the declaration was enacted by Congress as a part of the general appropriation bill making appropriations for the District of Columbia for the fiscal year ending June 30, 1909. Undoubtedly, the appropriation act in which the provision appears, in so far as it related to the appropriation and disbursement of the public moneys, did not take effect until July 1, 1908. The act, to this extent, was part of the general fiscal legislation for the year ending June 30, 1909. As to these items, the date when the act became effective is controlled not by the date of its approval, but by the date when the moneys appropriated become available, as fixed in the enacting clause, which corresponds with and is controlled by sec. 237, Rev. Stat. U. S. Comp. Stat. 1901, p. 130, which provides as follows: "That the fiscal year of the Treasury of the United States in all matters of accounts, receipts, expenditures, estimates, and appropriations, except accounts of the Secretary of the Senate for compensation and traveling expenses of Senators, and accounts of the Sergeant-at-Arms of the House of Representatives for compensation and mileage of members and delegates, shall commence on the first day of July in each year; and all

accounts of receipts and expenditures required by law to be pub-
lished annually shall be prepared and published for the fiscal
year, as thus established.   The fiscal year for the adjustment of
the accounts of the Secretary of the Senate for compensation
and traveling expenses of Senators, and of the Sergeant-at-Arms
of the House of Representatives for compensation and mileage
of members and delegates shall extend to and include the third
day of July."

This, however, is not in conflict with what we regard as an
elementary principle, that a legislative act becomes a law when
approved by the Executive.   The taking effect of the act as a
whole, or of parts of it, may be deferred, either by the terms of
the act itself, or by another act, in the light of which it is to be
construed.   "The existence of a law and the time when it shall
take effect are two separate and distinct things.   The law exists
from the date of approval, but its operation is postponed to a
future day.   Suppose the legislature, at its session in 1895, had
passed an act providing that after the 1st day of January, 1896,
the rate of interest should be 8 per cent per annum on all money
loaned; it could not be said that the law did not exist until the
1st day of January, 1896, but, on the other hand, it is plain
that the law would owe its existence to the date of its approval,
but would not go into effect until a future day."   *People ex rel.
Graham* v. *Inglis,* 161 Ill. 256, 43 N. E. 1103.

The provision of the act before us must be regarded as general
legislation.   There is no limitation as to how long it shall re-
main in force.   There is nothing in the act of Congress in
which this provision appears, stating when general provisions
of the act shall take effect.   In the absence of such a statement
in the act itself, or in some other governing statute, it will be
construed to take effect from its approval.   *Jackman* v. *Garland,*
64 Me. 133.

It is a common custom of Congress to incorporate items of
general legislation in appropriation acts.   Where this occurs,
any piece of general legislation is to be construed as if it had
been embraced in a separate enactment.   It follows, therefore,
that, unless there is something in the appropriation act, or in

some other statute, fixing the time when such general provisions shall take effect, they must be construed to take effect from the approval of the act.   In the case at bar, the time fixed by deduction for the taking effect of the appropriation act, both in its enacting clause and in sec. 237, Rev. Stat., relates solely to the appropriations made under the act, and not to the act in its entirety.   Hence, it must be ruled that, as to this provision, it was given the force of law by the approval of the act by the President, and became effective from that date.

The judgment is affirmed, each of the parties to pay one half of the costs, and it is so ordered.                    *Affirmed.*