## UNITED STATES v. BELT et al.

### No. 56787.

District Court of the United States for the District of Columbia.

Oct. 7, 1942.

Alexander Bell, Jr., of Washington, D. C., for plaintiff.

William E. Richardson and Milton D. Campbell, both of Washington, D.C., for defendants.

LAWS, Justice.

Suit by the United States as plaintiff brought pursuant to Act of Congress of April 27, 1912, 37 Stat. 93, to establish and make clear the title of the United States in parcels of land in the District of Columbia adjacent to the Anacostia River or Eastern Branch of the Potomac River. The area involved is known as Square 666 in the City of Washington, District of Columbia.

The claim of the United States is that title to the land in Square 666, while purporting to have been conveyed, at or about the years 1793 and 1794, to the predecessors in interest of the defendants by Commissioners of the United States appointed

to lay out the City of Washington, did not vest in the grantees, for the reason that the land was below the high water line of the Anacostia River, a navigable stream, and therefore was property of which only the Congress of the United States might lawfully dispose.

Upon consideration of the evidence adduced in support of the respective claims with regard to the question of fact as to whether the property in question was below the high water mark of the River at the time of the conveyances, I find there is much doubt as to which claim is correct. However, there are considerations which lead me to the view that the contentions of defendants must be sustained. Approximately one hundred forty years have elapsed without calling into question the legality of the conveyances or the validity of the titles to the land in question. In the meantime, taxes have been paid on the property, in some instances improvements have been made, and in some cases loans have been made in reliance upon the validity of the titles. Under these circumstances, the burden is on the Government, which now seeks to attack title to the property, to establish its position by clear and convincing evidence. Maxwell Land-Grant Case (United States v. Maxwell Land-Grant Co.), 121 U.S. 325, 7 S.Ct. 1015, 30 L.Ed. 949; United States v. Budd, 144 U.S. 154, 12 S.Ct. 575, 36 L.Ed. 384; United States v. Stinson, 197 U.S. 200, 25 S.Ct. 426, 49 L.Ed. 724. Moreover, such a burden must be imposed on the Government for the reason that the Court will presume the Commissioners of the United States acted lawfully in making the conveyances. State v. Dugan, 110 Mo. 138, 19 S.W. 195. See also Butler v. Maples, 9 Wall. 766, 19 L.Ed. 822; Minter v. Crommelin, 18 How. 87, 15 L.Ed. 279; Phillips v. Ballinger, 37 App.D.C. 46; Korbly v. Springfield Institute for Savings, 245 U.S. 330, 38 S.Ct. 88, 62 L.Ed. 326; Washington Terminal Co. v. District of Columbia, 36 App.D.C. 186. Because of the burden thus imposed upon the Government, I have concluded it has failed to establish as a fact that the land here in dispute, when conveyed to defendants' predecessors in interest, was below the high water mark of the Anacostia River or Eastern Branch of the Potomac.

Consideration of the decision of the Supreme Court of the United States in Morris v. United States, 174 U.S. 196, 19 S.Ct. 649, 43 L.Ed. 946, relied upon by the Government to support its claim, convinces me that it does not control the factual findings in the case at bar. In the Morris case, the Court dealt with the Potomac River and the land adjoining it. In the present case, the Eastern Branch of the Potomac and the land adjacent is in litigation. Specific evidence as to the character of the soil along the Eastern Branch was introduced before me which was not in any manner brought before the Supreme Court in the Morris case. This evidence, of a geologist and of other eye witnesses as to the character of the soil, indicated fast land as of the time of the conveyances to defendants' predecessor in interest. This evidence, highly persuasive, was not contradicted by the same character of convincing evidence, although evidence on the point must have been available to the Government. Therefore, while some language of the Morris case, obviously obiter dictum, supports the Government's claim, yet under the circumstances it should not control the findings of fact in this case.

I have further concluded that granting, arguendo, plaintiff's position in the case at bar should be found to be correct in point of fact, nevertheless the Government is not in a position to urge this point before this court of equity without at least an offer to award to the defendants compensation equal to the value of the land. All of the conveyances by which the Commissioners of the United States obtained title for the United States to the property in this case contained provisions as follows: "To have and to hold the hereby bargained and sold lots, pieces, and parcels of ground with their appurtenances, * * * To and for the special trusts following and no other, say, that all the said lots, pieces, and parcels of ground hereby bargained and sold, be laid out together with the other lands and designated for that purpose, for a Federal City, with such streets, squares, parcels, and lots as the President of the United States, for the time being, hath approved or shall approve; and that the said Thomas Beall (Son of George) and John Mackall Gantt, or the survivor of them, or the heirs of such survivor, shall convey to the Commissioners, for the time being, appointed by virtue of the Act of Congress, intitled, 'An Act for Establishing the Temporary and Permanent Seat of the Government of the United States',

and their successors for the use of the United States, forever, all the said Streets, and such of the said squares, parcels and lots, as the President shall deem proper, for the use of the United States. And that one-half the quantity of the said lots, pieces and parcels, hereby bargained, and sold, shall be assigned and conveyed as near the old situations, as may be to him the said Charles Carroll of Carrollton, his heirs, and assigns, in fee simple, so that he shall have made up to him one-half of his former quantity and in as good a situation; but if from appropriations for the use of the United States one half the quantity cannot be assigned to him in like situation, then shall there be satisfaction made him in ground, within the Federal City, by consent and agreement between him and the Commissioners, but if they should disagree, then shall the same proprietor receive a just and full compensation in money, in lieu of land. And that such parts of the said lots, pieces, and parcels hereby bargained and sold, which shall remain clear of appropriations for the use of the United States, and which shall remain after satisfaction in land, to the now proprietors, shall, and may be sold at such time, or times, in such manner, and on such terms and conditions, as the President of the United States, for the time being shall direct; and that the said Thomas Beall (Son of George) and John Mackall Gantt, or the survivor of them, or the heirs of such survivor, will, on the order or directions of the President, convey the same to the respective purchasers, in fee simple, according to such direction, and the terms and conditions of such purchases; and the proceeds of the sales shall as far as necessary, be in the first place applied to make good the payment in money (where compensation is to be made in money) and what thereof may remain in money or securities of any kind, shall be paid, assigned, transferred, and delivered over to the President, for the time being, as a grant of money, and to be applied for the purposes, and according to the Act of Congress aforesaid. But the said conveyances to the purchasers shall be on and subject to such terms and conditions as shall be thought reasonable by the President, for the time being for regulating the materials and manner of the buildings and improvements on the lots, generally in the said City, or in particular streets, or parts thereof, for common convenience, safety and order; Provided such terms and conditions, be declared before the sale of any of the said lots, under the direction of the President." (Defendants' Exhibit 1—Murray, Examiner) These conveyances imposed a legal duty on the Government to make return to the grantors either in the form of property or in the form of payment of compensation. Pursuant to this obligation, the Commissioners purported to convey property now claimed to have been beyond their power to convey. If title in the Government now is cleared, is not the Government in good conscience required to make compensation as required by the instruments through which its claim arises? It cannot be questioned that the Government, when applying for relief in a court of equity, is as much bound to do equity as a private litigant. Brent v. Bank of Washington, 10 Pet. 596, 614, 9 L.Ed. 547, 555; McKnight v. United States, 98 U.S. 179, 25 L.Ed. 115; United States v. Detroit T. & L. Co., 200 U.S. 321, 26 S.Ct. 282, 50 L.Ed. 499.

I find no provision similar to that quoted in the present case was included in any of the conveyances to the Commissioners of the United States by property owners in the Morris case, supra. Therefore, the right to compensation when urged in the Morris case might be said to be purely a moral right, of which a civil court cannot take notice, as distinguishable from a contractual or property right, where courts of equity have jurisdiction.

It seems there can be no question as to the right of the Government to acquire from the defendants in this case title to the property, but in my opinion this can only be accomplished upon an award of just compensation.

Proposed Findings of Fact and Conclusions of Law have been submitted to me before reaching the conclusions here announced. They will be settled as of the time of submission of the proposed order of Court in conformity with the views I have expressed. At the same time, the question of any further proceedings to be taken in this cause may be discussed.