Neal J. HARDY, as Commissioner of the Federal Housing Administration, Substituted Plaintiff,

v.

SAVANNAH APARTMENTS, INC., Defendant.

Civ. A. No. 876.

United States District Court
S. D. Georgia,
Savannah Division.

June 28, 1962.

Donald A. Fraser, U. S. Atty., Richard C. Chadwick, Asst. U. S. Atty., for Federal Housing Administration.

Kirk McAlpin, Bouhan, Lawrence, Williams, Levy & McAlpin, Savannah, Ga.; J. C. Long and W. Turner Logan, Charleston, S. C., for Savannah Apartments, Inc.

FRANK M. SCARLETT, District Judge.

This is an action originally brought by NORMAN P. MASON as Commissioner of the Federal Housing Administration against SAVANNAH APARTMENTS, INC. Julian H. Zimmerman was substituted as Plaintiff when he became Commissioner, and after his resignation, Norman P. Mason was substituted as Plaintiff in his capacity as Acting Commissioner. Thereafter, Neal J. Hardy, the present Commissioner, was substituted as plaintiff. The defendant, Savannah Apartments, Inc., operates an apartment house in the City of Savannah, known as "The Chatham". The Plaintiff sought an injunction to restrain and enjoin "The Chatham" from:

(a) Renting units for terms of less than thirty (30) days;

(b) Charging rent per unit in excess of the monthly rental schedule approved by the Commissioner;

(c) Supplying services to tenants without prior approval of the Commissioner in writing;

(d) Advertising said rental housing as a "hotel" or "apartment hotel".

A temporary injunction and rule to show cause issued on June 4, 1956. The same was vacated on July 25, 1956. Since then the Defendant has been renting some units in the Chatham Apartments for terms of less than thirty (30) days in order to supplement income due to a vacancy condition which has continued to exist. Since the filing of the complaint the Defendant has not done any of the acts complained of, except the renting of units for terms of less than thirty (30) days. The Plaintiff does not contend otherwise and the Defendant stipulates and voluntarily consents and will be bound by this Order that it has not and will not:

(a) Charge rent per unit in excess of the monthly rental schedule approved by the Commissioner;

(b) Supply services to tenants without prior approval of the Commissioner in writing;

(c) Advertise such rental housing project as a "hotel" or an "apartent hotel".

The Defendant filed a Motion for Summary Judgment attaching certain affidavits. A hearing was had before me on said motion, at which time the Defendant introduced additional documentary evidence which was filed and made a part of the record to be considered in

connection with its Motion for Summary Judgment. Subsequently, and before the Court ruled on said motion, counsel for both parties had entered into a stipulation of record that all exhibits and documents on file and attached to any and all of the pleadings in said cause, including those attached to interrogatories and requests for admissions, any and all replies thereto, as well as such other documents and matter agreed upon and referred to in said stipulation, are to be considered by the Court in connection with said motion for summary judgment, and the Court has so considered same. Such stipulation also recites and the Court so finds that there is no other factual evidence which need be considered in connection with this motion, counsel having so stipulated that all available and pertinent evidentiary matter has been filed and made available to the Court. At the hearing, the Defendant's Motion for Summary Judgment was amended, by consent, to include all the issues raised in the Defendant's Amended Answer. In substance, these are that the Defendant is no longer subject to regulation by the Federal Housing Administration or to the prohibition against transient rental contained in Section 513 of the National Housing Act, as amended [12 U.S.C. § 1731b] because the contract of mortgage insurance has terminated (Second and Third Defenses); that it is in the public interest to permit transient rentals in the Defendant's apartment project because of an existing and long-standing vacancy problem (Fourth Defense); and that the City of Savannah, Georgia, where the Defendant's project is located, is a resort area and that therefore the Defendant is entitled to rent transiently as many apartment units as it rented transiently prior to May 28, 1954 (Fifth Defense). The Plaintiff, although it admits that the mortgage insurance contract has terminated, claims that it is nevertheless entitled to regulate the Defendant because it owns the Defendant's security deed and note and the debentures are outstanding; and further claims that it is

discretionary with the Federal Housing Commissioner whether to declare Savannah a resort area and that the Defendant has not exhausted the administrative remedies.

The sole consideration before this Court on Defendant's Motion for Summary Judgment is whether or not the Plaintiff's complaint seeking to enjoin Defendant from renting units for less than thirty (30) day periods should be denied.

The Court finds that the Plaintiff's complaint for injunction, as prayed, should be denied. The circumstances developed by the evidence, affidavits, depositions and stipulation do not justify its issuance, except to the extent and for the reasons hereinafter mentioned.

The Chatham Apartments was financed and constructed under Section 608 of the National Housing Act (12 U.S.C. § 1743). The project was completed on or about July of 1952. On September 6, 1950, Defendant Corporation executed a Deed to Secure debt and promissory note in the sum of One Million Nine Hundred Seventy-Five Thousand and no one hundredths ($1,975,000.00) Dollars, with interest, to the Echo Mortgage Corporation of Charleston, South Carolina, providing for monthy payments of principal and interest of Nine Thousand, Fifty-two and eight one hundredths ($9,052.08) Dollars; said Security Deed and Note were then transferred and assigned on September 6, 1950, to the New York Savings Bank. At the time of the issuance of the Security Deed and during the interim when it was held by the New York Savings Bank from September 6, 1950, until May 26, 1952, the project was insured under Section 608 of the National Housing Act (12 U.S.C. § 1743) and regulations thereunder of the Federal Housing Commissioner in effect on October 3, 1950. On May 26, 1952, the New York Savings Bank assigned and transferred said Security Deed to the Federal Housing Commissioner, at which time the insurance was then terminated; that the Federal Housing Administration at

said time, on or about May 26, 1952, refunded to defendant the sum of $6055.-33, representing unearned mortgage insurance premiums theretofore paid by defendant to Federal Housing Administration prior to the assignment of defendant's note and security deed from New York Savings Bank to the Federal Housing Commissioner. Since then, Defendant has made no other or further payments of mortgage insurance premiums to Federal Housing Administration, nor has any been requested by the Federal Housing Administration. Plaintiff's replies to Defendants interrogatories corroborated that such insurance was so terminated, and such refund of premiums so made. Defendant contends that the Plaintiff's right to regulate exists only so long as such mortgage insurance remains outstanding upon the mortgage without further obligation upon the Commissioner to issue debentures as a result of such termination. In November, 1952, the Plaintiff did issue such debentures to the New York Savings Bank in exchange for the assignment and transfer of said Security Deed by the New York Savings Bank to the Federal Housing Commissioner. That the Federal Housing Administration did so issue such debentures, effective May 1, 1952, with a maturity date of May 1, 1962, and that same were shipped to the New York Savings Bank on November 26, 1952, is evidenced by the Plaintiff's replies to Defendant's interrogatories of record, reading:

"1. a. The Federal Housing Administration by FHA requisition No. 2313 dated November 7, 1952, authorized the Secretary of the Treasury to issue and ship to the New York Savings Bank 2½% Series H War Housing Insurance Fund debentures in the amount of $1,954,450.00 with an effective date of May 1, 1952, and maturity date of May 1, 1962. The debentures were shipped by the Treasury Department on November 26, 1952."

In response to Defendant's interrogatories to ascertain whether or not plaintiff had redeemed such debentures, the Plaintiff on June 2, 1960 replied that it was not possible to make this determination:

"* * * it is not possible to determine if any of the debentures have been paid or what the principal balance now outstanding should be; nor the contemplated date of payment in full on any of these debentures that may remain outstanding * * *"

Thereafter, Mr. Robert M. Farr, Assistant Commissioner for Mortgages and Properties, Federal Housing Administration, on October 13, 1960, when his deposition was taken by Defendant, stated "there is no official in the FHA who can determine whether or not the debentures covering Savannah Apartments have been paid", he having been so advised by the Federal Housing Administration Comptroller's Office, as appears from Mr. Farr's deposition of record, reading:

From pages 14–15:

"BY MR. McALPIN

"Q. Let me turn just briefly to one other thing. How would we determine if the Federal Government, the Treasury Department, had paid for debentures or if debentures had been called in that may have been issued on one of these projects.

"I am referring specifically to this Savannah Apartments, Inc. I could give you a factual statement that the New York Savings Bank, its insurance was cancelled and they were issued debentures by the Government?

"A. You mean the mortgage was assigned to us and we issued debentures, the Federal Housing Administration issued debentures?

"Q. That's right. And the interrogatories state that the Government didn't know whether or not those debentures had been called or whether they had been paid. Have you determined since these

interrogatories were filed whether or not debentures have been paid?

"A. I haven't that information.

"The Federal Housing Administration does call them just as fast as they can.

"Q. Your file on this doesn't reflect that?

"A. I would have to get that from the Comptroller's Office."

And from Page 22:

"BY MR. LOGAN:

"Q. Mr. Farr, may I ask you this: Whether as a result of our off the record discussion your answer to my last question would be, in substance, *that there is no official in the Federal Housing Administration who can determine whether or* not the debentures covering Savannah Apartments have been paid?

"A. I have been so advised by the Comptroller's Office."

Whether or not the debentures were paid or there was any further obligation on the part of the Federal Housing Administration in that respect is not known to the Plaintiff, and according to Mr. Farr's deposition, there is no means of obtaining this information. However, the debentures that were issued to New York Savings Bank had "an effective date of May 1, 1952, and maturity date of May 1, 1962". (Reply to Additional Interrogatory 1a). Hence, after these debentures' maturity on May 1, 1962, and redemption, the Federal Housing Commissioner would have no further obligations of any description under the contract of mortgage insurance which was entered into on October 3, 1950, and which terminated on or about May 26, 1952, the date of the assignment of Defendant's Security Deed by New York Savings Bank to FHA. Defendant's contention that the Plaintiff Federal Housing Commissioner cannot prohibit transient rentals or otherwise regulate Defendant after the mortgage insurance contract is terminated is based in part on Section 513 of the National Housing Act (12 U.S.C. § 1731b, added by the Housing Act of 1954) and in part on 24 C.F.R. 280.29, a regulation promulgated in implementation of Section 608 of the National Housing Act (12 U.S.C. § 1743).

Sub-section (a) of Section 513 of the National Housing Act (12 U.S.C. § 1731b (a)) provides that the Congressional intent excludes the use of housing built with the aid of mortgages insured under that act for transient or hotel purposes "while such insurance on the mortgage remains outstanding" and subsection (b) thereof provides that with certain specified exceptions no multifamily housing "with respect to which a mortgage is insured under this Act" shall be operated for transient or hotel purposes. By way of digression, the Plaintiff also relies on Section 513 and has brought this action pursuant thereto because another subdivision of Section 513 contains the only provision in the entire National Housing Act permitting an injunction against transient rentals.

It is beyond dispute that the contract of mortgage insurance had been terminated on or about May 26, 1952, when New York Savings Bank assigned defendant's Security Deed to FHA; that debentures did issue on May 1, 1952, with a maturity date 10 years thereafter, or May 1, 1962. The plaintiff, while recognizing that the insurance has terminated, has stated of record as far back as 1957 that aside from the fact that the mortgage insurance was terminated, FHA then possessed regulatory power, including the right to regulate transient rentals, by virtue of the fact that the debentures were *then* outstanding and it had obligations therefor. What might have applied in 1957 to afford a further basis of regulatory power to the FHA by virtue of the existence of its obligations for the debentures, aside from the question of whether or not the plaintiff lost this regulatory power upon termination of the mortgage insurance, is no longer a basis for a claim of such regulatory powers. While this question may not have been ripe for determination prior

to May, 1962, such is no longer the case. The apparent inability of the Plaintiff to ascertain whether or not these debentures have been redeemed causes the Court to resolve any doubt regarding redemption in favor of the defendant and against the Plaintiff, since the ascertainment of this information has been, and is, more within the province of the Plaintiff than the Defendant. That the Plaintiff itself recognizes that its regulatory powers depend upon the existence of some obligation remaining in connection with the debentures prior to their redemption, is made abundantly clear by the exchange of communications between the Defendant and the Plaintiff, originating with the Defendant's letter of February 21, 1957, in which the defendant sought, by virtue of the termination of mortgage insurance, to redeem its preferred stock of the value of $100.00 held by Plaintiff. We quote that letter:

"Mr. Norman P. Mason
"Commissioner
"Federal Housing Administration
"Washington 25, D. C.
"In re: Savannah Apartments, Inc.
    "FHA No. 061–42092
"Dear Sir:
"As the records of your office will show, the insured mortgage on the above captioned project was assigned to your administration several years ago, and that your administration delivered to the mortgagee in connection with the assignment of the mortgage its debentures, and that therefore all obligations of the Commissioner under the insurance has terminated.
"We wish to advise that the revenue from the project has not been sufficient to declare any dividends on either the common or preferred stock, and pursuant to Section 608, Title VI of the National Housing Act, Subdivision B. Section 1, we hereto attach money order made payable to you in the sum of $100.00 for the redemption of the preferred stock held by you or your administration in the above project.

"Thanking you in advance for the immediate surrender and return of the stock to us at 609 Abercorn Street, Savannah, Georgia, I am,
    "Yours very truly,
"_____
"Frank J. Sottile
"Secretary
"Savannah Apartments, Inc."

and Plaintiff's reply thereto of March 18, 1957, in which the redemption of the stock was refused and defendant's postal money order returned. The Plaintiff therein recognized and explicitly stated that it was holding the stock for the reason that it was "still liable for the payment of the debentures issued to the former mortgagee and therefore his obligations under the insurance contract have not been terminated." So much of the Plaintiff's letter as is pertinent is quoted:

"* * * We direct your attention to Article 6(c) of the Charter and Section 608, Title VI of the National Housing Act, Subdivision B, Section 1 which provide that the preferred stock shall be redeemed by the mortgagor at par upon the termination of all obligations of the Commissioner under the mortgage insurance contract. The Commissioner, in spite of the assignment of the mortgage is still liable for the payment of the debentures issued to the former mortgagee and therefore his obligations under the insurance contract have not been terminated."

### I.

### DID THE PLAINTIFF LOSE ITS REGULATORY POWERS ON TERMINATION OF THE MORTGAGE INSURANCE AND/OR MATURITY OF DEBENTURES?

This question as to whether the Plaintiff's right to regulate transient rentals was lost involves several considerations:

(1) Does the regulatory power of the Federal Housing Commissioner terminate under Sub-Section (a) of § 513 of the National Housing Act (12 U.S.C. §

1731b (a)) when the insurance on the mortgage terminates? The language of the Act, particularly so much as reads,

" * * * while such insurance on the mortgage remains outstanding. * * *."

would appear to indicate that such regulatory powers would terminate *simultaneously with the insurance.* In the case at bar, the insurance was terminated on May 26, 1952, which would appear to give credence to defendant's contention. However, the Court recognizes that there may be merit in the plaintiff's contention that so long as it has a right to hold defendant's preferred stock (which has a value of only $100.00), while it has any obligations during the life of the debentures, Congress may have intended to extend plaintiff's regulatory powers so long as any such obligation for the debentures existed. Such seems to be the interpretation of the Act as evidenced by the Commissioner's regulation, to wit, 24 CFR § 280.29, the pertinent portion thereof reading:

"Section 280.29. *Regulation of Mortgagor by Commissioner in general.* * * * Upon the termination of all obligations of the Commissioner under his contract of mortgage insurance or any succeeding contract or agreement covering the mortgage obligation, including the obligation upon the Commissioner to issue debentures as a result of such termination, all regulation and restriction of the mortgagor shall cease * * *"

It is apparent from the Commissioner's own construction of the Act that his regulatory powers shall cease when obligations for the debentures terminate. This Section of the regulation may be construed in either of two ways: *Firstly,* on the termination of mortgage insurance, the Commissioner has an obligation to issue debentures. When issued, his power to regulate terminates with the issuance of the debentures. This is the defendant's contention, which would mean that the Commissioner's power to regulate terminated when debentures were issued to the New York Savings Bank; the mortgage insurance was terminated on May 26, 1952. But *secondly,* even if the Commissioner's regulation above-quoted were construed liberally in his favor, his power would certainly terminate when his obligation for the debentures had ended, which the Court would construe to mean, according to plaintiff's own contentions, as stated in his letter of March 18, 1957, when the debentures are redeemed. The record reflects that these debentures matured on May 1, 1962. It is reasonable to assume, in the absence of any evidence to the contrary (which the plaintiff has failed to adduce, although it had the opportunity to do so) that these debentures would ordinarily have been redeemed upon maturity. When redeemed, the FHA would then have had no further obligations for the debentures.

(2) The next question then is whether the debentures have been redeemed. Who would be responsible for furnishing this information? The record shows that Defendant has long sought to ascertain this fact. Not only did it ask by interrogatories as far back as 1959, to which the Plaintiff on June 3, 1960 answered that it could not then tell, but the *Defendant* also incurred the expense and went to the trouble of having its attorneys go to Washington to take the deposition of Mr. Robert M. Farr, the then Assistant Commissioner of Mortgages and Properties of the Federal Housing Administration at Washington, D. C. His deposition of record reflects that Mr. Farr had notice in advance of the scheduled deposition, and it is reasonable to assume that he had an opportunity to acquaint himself with the details of the litigation, including the information the defendant had sought by interrogatory prior to the taking of his deposition. Among the questions propounded to Mr. Farr was whether the debentures had been or would be redeemed, to which Mr. Farr again reiterated the position of the Federal Housing Administration to the effect that this information had

not been ascertained. Although there had been a hearing on this motion for summary judgment and the Plaintiff has had ample opportunity to determine the facts in this connection, still no information in regard to it has been brought to the Court's attention. In the Court's opinion, defendant has exhausted all efforts to make this determination, and Plaintiff either can not ascertain this or has failed to exercise sufficient diligence to determine it.

When the Court is faced with a situation of this type, where a party fails to produce evidence in its power, the Court certainly will not permit the party which has such evidence available to it to claim the advantage created by the absence of such information. Specifically, if the debentures have been redeemed, the Commissioner's power to regulate the defendant terminates, and the defendant would have a right to rent its property as it pleases. Moreover, the Government (plaintiff) would have no right to hold the defendant's preferred stock, and would be required to return the stock to defendant, pursuant to Defendant's request on February 21, 1957, when it tendered to Plaintiff a postal money order for $100.00. If the Plaintiff is not able to say whether or not the debentures have been redeemed, how then can it take the inconsistent position that they have not been redeemed, and that the Federal Housing Administration still has regulatory powers until redemption? Why should the Court have reason to believe that the debentures have not been redeemed? Why isn't it more reasonable to assume that they were redeemed upon maturity on May 1, 1962? Ordinarily, the Court would consider this a matter of factual determination, and that a summary judgment would not be in order, but in view of the constant requests by the Defendant to the Plaintiff to ascertain this information, and the repeated replies by the Plaintiff that it is not ascertainable, the Court finds that it would serve no useful purpose to leave the issue any longer open for determination. In view

of the uncertainties created by the plaintiff itself by its inability to advise whether or not the debentures have been redeemed, the Court feels constrained to hold that where there is ambiguity in this respect, in the creation of which ambiguity the defendant has had no part, the Court will conclude and so find that the debentures in the ordinary course of events would have been redeemed at maturity on May 1, 1962, and the plaintiff's power to regulate Defendant based thereon has ceased.

Unlike the Darlington case (Federal Housing Administration v. The Darlington, Inc., 358 U.S. 84, 79 S.Ct. 141, 3 L.Ed.2d 132) the Defendant Corporation's mortgage insurance in the case at bar had been terminated prior to the issuance of the Commissioner's complaint, hence the ruling of the Supreme Court of the United States in the Darlington case, supra, is distinguishable from the present case in that the questions of the right to so regulate when either the mortgage insurance was terminated or the debentures redeemed were not in issue in that case.

## II.

### PUBLIC INTEREST

While the Court is of the opinion that the Commissioner's power to regulate ceased on the termination of the mortgage insurance contract without further obligation to issue debentures, and/or on redemption of the debentures, as aforesaid, which would be sufficient in itself to deny the Government's injunction in the present case, nevertheless, the Court does not deem it necessary to base its decision wholly on that ground, there being sufficient other reasons for such denial as prayed, as will hereafter appear.

The affidavit of the Secretary of the Defendant shows that the units in the Chatham Apartments were made available for transients rental for periods of less than thirty days (30) prior to May 28, 1954. Further affidavits show that through the fiscal year ending September 30, 1961 the Defendant Corporation in

the operation of the Chatham Apartments has continuously lost money in every year except 1959. The project was completed in 1952 and since then the operating deficits, with the exception of 1959, appear as follows:

SAVANNAH APARTMENTS, INC.

PROFIT OF LOSS    -    1952 THROUGH 1961

|      | Profit | Loss | Deficit Balance |
|------|--------|------|-----------------|
| 1952 |        | $10,498.08 |        |
| 1953 |        | 8,749.55 |        |
| 1954 |        | 52,245.82 |        |
| 1955 |        | 10,570.13 |        |
| 1956 |        | 9,177.02 |        |
| 1957 |        | 4,575.88 |        |
| 1958 |        | 3,085.89 |        |
| 1959 | $2,381.52 |        |        |
| 1960 |        | 20,404.85 |        |
| 1961 |        | 22,437.77 | $139,360.88 |

It has been brought to the Court's attention from the plaintiff's replies to the Defendant's interrogatories that on December 17, 1951, the Federal Housing Commissioner, in order to relieve a vacancy problem, agreed with Essex Homes, Inc., a similar type project in Birmingham, Alabama, that "temporarily, until permanent occupancy increased, * * * apartments unrented on a permanent basis would be made available on a transient basis",—i. e., for periods of less than thirty (30) days. This agreement to permit such transient occupancy remained in effect, with the concurrence of the Federal Housing Commissioner, until February 11, 1955, when it was terminated purportedly for violations of the agreement. While this was prior to the 1954 Act, and not determinative or controlling, it does show a prior recognition on the part of the FHA to afford some relief where the evidence showed a vacancy problem.

It has been made to appear in the present case that the Defendant Corporation has had and does have a similar vacancy problem as did Essex Homes, Inc. in Birmingham. In the decision in the Darlington case, (Federal Housing Administration v. The Darlington, Inc., 358 U.S. 84, 79 S.Ct. 141, 3 L.Ed.2d 132) the Supreme Court stated in Footnote 5 that the Federal Housing Commissioner had in a dozen or more instances given permission for transient rentals in apartment projects like the Defendant's whenever "the public interest required it". Because of the Defendant's continued vacancy problem, it would appear that to enjoin the defendant from renting any of the units transiently would be contrary to the public interest, as it would inevitably lead to default, foreclosure and substantial loss to the Treasury.

Although the Supreme Court of the United States in Federal Housing Administration v. Darlington, supra, indicated that the 1954 amendment gave the FHA power of permitting unlimited transient rentals where the "public interest" required it and cited Section 513 (b) of the Act as authority therefor (see 358 U.S. page 90, 79 S.Ct. page 145, of the Darlington case, supra, and footnote 5 thereof), nevertheless, this Court need not give consideration to unlimited transient rental for the defendant in the present case. The Defendant has voluntarily consented to be bound that it will not lease to transients for periods of thirty (30) days or less, unless and until the vacancies in the Chatham Apartments exceed 7% of the total of 234 units in the building.

While the Court has previously stated that it does not believe that Plaintiff any longer has the right to regulate for the reasons aforesaid, nevertheless the Court will treat the Defendant's further contention that it has a right to rent transiently since the public interest requires it. The Court does not decide that on this ground alone the Defendant would have unlimited right to rent transiently. However, in view of Defendant's agreement and consent to be bound and enjoined to rent transiently unless and until its vacancies exceed 7%, the Court is of the opinion that the financial plight of the Defendant, as well as the inducements originally held out by the Federal Housing Administration to private investors to stimulate their constructing this type of units during times of national emergency, warrants some consideration to be given the defendant. This is also particularly true in view of the FHA's suggestions to the investors, stating that these projects should be figured on the basis of having 7% vacancies. The mortgagee's application furnished by the Government contains printed statements to that effect, particularly so much thereof under Section 5 entitled "Estimated Annual Operating Statement," and that part reading:

"(b) *Vacancies.* The assumed vacancy should depend on local conditions, but ordinarily should not be taken at less than 7% * * *"

The estimated annual operating statement of the Chatham Apartments (attached to the original application for mortgage insurance, dated December 31, 1949, and of record in the present case) shows that a 7% vacancy was assumed in arriving at the estimated annual operating statement on which the plaintiff approved financing the project.

The Plaintiff recognizes that for the project to be successful its vacancies should not exceed 7%. The application so reflects. The Court also takes judicial notice of the fact that these projects were designed to relieve a critical housing shortage, in that the Government and the Plaintiff actively promoted and advertised these projects as financially appealing to private investors. They sought the help of private capital to aid in a national housing emergency that was critical. Without it, it is possible that it could not have been accomplished. This recognition has been aptly stated by a distinguished Court in United States v. Woodland Terrace, Inc., 293 F.2d 505 (4 Cir., 1961), the Court there saying:

"The United States actively promoted the construction of such projects by private business and the use of FHA insured financing. In doing so it promised to be a lenient and understanding creditor * * *.

"In passing the Veterans' Emergency Housing Act of 1946, the Congress found that the combination of the return of veterans of World War II and a long-term housing shortage had created an unprecedented emergency. It called upon executive agencies to exercise their emergency and other powers toward the alleviation of the housing problem.

"On December 23, 1946, President Truman announced that a vigorous housing program would be continued into 1947. He emphasized particularly the need of rental housing for returning veterans."

The Court takes judicial notice and so finds that private investors when responding to the Administration's call to participate in the construction of such projects to relieve a critical housing shortage on the return of veterans from World War II, did render a public service, and it would now be against the public interest to prohibit the Defendant from doing some transient rental when otherwise the project faces certain financial destruction. Its losses continue to mount, even though it has been renting transiently since 1952, except for a brief interruption of one month while this Court entered an ex parte injunction on the Plaintiff's application on June 4,

1956, which was vacated by agreement of parties on July 25, 1956. The financial losses, even since then, make it self-evident that to enjoin transient rentals would in all likelihood only serve to increase the deficits.

In view of the defendant's agreement to consent to a limited injunction as aforesaid, this Court will permit defendant to rent transiently on such basis.

### III.

### RESORT AREA?

■ A further and distinct consideration involved Defendant's contention that it is in a "resort area", and its units had been made available on a transient basis prior to May 28, 1954, and therefore defendant should be allowed to rent transiently as would be permitted under an exception provided in Sub-Section (2) of § 513 of the said Act, which provides:

"(2) the project covered by the insured mortgage is located in an area which the Commissioner determines to be a resort area, and the Commissioner finds that prior to May 28, 1954, a portion of the accommodations in the project had been made available for rent for transient or hotel purposes * * *."

A determination as to whether or not defendant would fall within the aforesaid exception to the prohibition against transient rentals provided by Section 513 of the Act involves two considerations, namely, (1) was a portion of the accommodations in the Chatham Apartments made available for rent for transient purposes prior to May 28, 1954; and (2) has the Commissioner made a determination that the area in which the defendant project is located is a "resort area". Treating these two separate conditions in their respective order, the Court finds that there is evidence in the record that the Defendant did make accommodations available for transient purposes prior to May 28, 1954, as evidenced by affidavit of Frank J. Sottile,

Secretary of the Defendant Corporation. It matters not whether plaintiff permitted or agreed in writing to such accommodations to be made so available, as that involves a separate and distinct exception under Sub-Paragraph (1) of Section 513, and has no relevancy regarding the second exception of Sub-Paragraph 2 of said Act. Having so found that the Defendant did make accommodations available prior to May 28, 1954, the second requirement of the exception must also be met by Defendant, and that is whether or not the Commissioner has determined Savannah to be a resort area. The record reflects that he has not. However, it appears from the record that the Defendant has sought to determine whether or not it would be given consideration if it requested an exemption for transient rental as being in a resort area. It appears that the Plaintiff has absolutely refused to give any consideration to such request, and has stated categorically that even if application or request were made for such a determination, that it would be turned down. Such is the testimony of Assistant Commissioner Farr, whose deposition is of record, to the effect that:

"Q. Are you able to answer at this time, and this may be subject to Mr. Arnold's objection, whether such a request from Mr. Long would furnish a sufficient predicate for a further request that Savannah be *determined a resort area?*

"A. I would say that my responsibility as *Assistant Commissioner of Mortgages and Properties* would be to be *unalterably opposed to transient occupancy,* that it would be in violation of the intent of Congress. * * *

"Q. *But now if it could be demonstrated* to your satisfaction that Savannah Apartments, Inc. had in fact been operating transiently prior to May 28, 1954, *would you then give consideration to declaring Savannah a resort area or not a resort area as the case* might be?

"A. *No; it would be against the policy of this administration, the Housing Administration, to permit in any way the Savannah Apartments to operate on a transient hotel basis.*" (Emphasis ours)

Moreover, Plaintiff's replies to Defendant's interrogatories show that the FHA has not made any determination or determinations as to whether Defendant's project is located in a resort area (see Plaintiff's replies to Defendant's interrogatories filed June 2, 1960). It was after Plaintiff's replies to interrogatories of June 2, 1960, that they had not made any such determination that the Defendant took Deputy Commissioner Farr's testimony in Washington, D. C. on October 13, 1960, when he so testified as above. It is to be borne in mind that Assistant Commissioner Farr stated that the Plaintiff would give no consideration to declaring whether or not Savannah was a resort area. This is diametrically opposed to the Plaintiff's own regulations promulgated by the Commissioner on April 15, 1957, and entitled, "Part C, Project Mortgage Servicing" and which are of record here. This regulation of April 15, 1957 provides in substance that whenever a FHA state office learns that a project is operating transiently, the director in charge of such office must, among other matters, make an investigation as to whether the project is located in a resort area, and must forward to Washington the facts which he has found and his recommendation to assist the Commissioner in making the required determination. Here not only did the plaintiff have specific notice that the Defendant had been renting transiently, certainly since the inception of the suit on June 4, 1956, but, moreover, had been requested by Defendant's interrogatories in 1959, as well as in questions propounded to Mr. Farr in October, 1960, whether the Commissioner had or would make a determination as to whether or not Defendant was located in a resort area within the meaning of the Act. The failure of the Plaintiff to ever make such a determination, although its own regulations require an independent investigation to be made *even without request,* would seem to estop the Plaintiff from urging that the Defendant failed to exhaust its administrative remedies in seeking such determination. Moreover, by the testimony of Assistant Commissioner Farr, as aforequoted, it would appear that it would be requiring Defendant to do a useless act to seek a determination as to whether or not it was entitled to the "resort area" exemption. The Supreme Court of the United States has held that a party need not exhaust a supposed administrative remedy that does not in fact exist. Such is the holding in Smith v. Illinois Bell Telephone Co., 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747. This Court in following the Smith case, supra, holds that the evidence appears to indicate that it would be of no avail to the Defendant to make a request for such a "resort area" determination.

The Court is familiar with Savannah, Georgia, which is an historical tourist city located only some 18 miles from the Atlantic Ocean and beach, which city prides itself on its tourist attractions, and while possibly the Court could take judicial notice of the resort attractions of this city, it does not desire to make this determination, not believing it to be the function of the Court to do so. Consequently, having recognized that the Defendant must show that it has met and complied with both requirements of the exception in Sub-Section 2 of Section 513(b) of the Act in order to be permitted to rent transiently under the resort area exception and has met only one, that is, having made accomodations available for transient rental prior to May 28, 1954, this Court can not and does not make a finding that Defendant is entitled to rent on a transient basis solely by reason of the "resort area" exception. The Defendant is not entitled under the present evidence to the so-called "resort area" exception. However, since the Plaintiff has arbitrarily refused to give consideration to a requirement of its own regulations to inde-

pendently and without request make a determination as to whether in fact the defendant is located in a "resort area", and to give any consideration to such determination, this Court believes the oft-quoted equity maxim, "He who would have equity must do equity, and give effect to all equitable rights in the other party respecting the subject-matter of the suit." (Ga. Code § 37–104) warrants application in the case at bar. The Court feels that plaintiff's failure to make this determination is sufficient to deprive it of the relief sought, to wit, an injunction against Defendant to prevent it from renting transiently. It was incumbent upon the Plaintiff to give effect also to Defendant's rights, which include its having a determination made as to whether it was operating in a resort area and entitled to the exemption provided in the Act. Failure of the Plaintiff to recognize this right of the Defendant, irrespective of whatever the determination might have been, does not place it in a favorable position in the eyes of this Court to seek injunctive relief as against the Defendant.

That this equity maxim likewise applies to the United States Government has been recognized by the Fifth Circuit Court of Appeals, as well as by the Supreme Court of the United States, as stated in Lacy v. United States, 216 F.2d 223, the Court there holding at page 225, to-wit:

"The Government when applying for relief in a court of equity is as much bound to do equity as is a private litigant. United States v. Belt, D. C., 47 F.Supp. 239, vacated 319 U.S. 521, 63 S.Ct. 1278, 87 L.Ed. 1559, affirmed 79 U.S.App.D.C. 87, 142 F.2d 761; United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 338, 26 S.Ct. 282, 50 L.Ed. 499; Daniell v. Sherrill, Fla., 48 So. 2d 736, 737, 23 A.L.R.2d 1410. 'When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that jus-

tice may be done with regard to the subject matter.' United States v. The Thekla, 266 U.S. 328, 339, 340, 45 S.Ct. 112, 113, 69 L.Ed. 313."

Therefore, it is hereby Ordered, Decreed and Adjudged that Defendant's Motion for Summary Judgment is hereby sustained and judgment entered for the Defendant, except and to the extent that Defendant has consented to be enjoined from:

(1) Renting to transient tenants for periods of less than thirty (30) days unless and until its vacancies exceed seven per centum (7%) of its units;

(2) Charging a rental per unit in excess of the monthly rental schedule approved by the Commissioner;

(3) Supplying services to tenants without prior approval of the Commissioner in writing;

(4) Advertising said rental housing project as a "hotel" or an "apartment hotel".

Judgment will be rendered in accordance with this opinion.